IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

| | |
|---|---|
| BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC, <br><br> Defendant-Intervenor. | Court No. 24-00263 |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO
COMPLETE OR SUPPLEMENT THE ADMINISTRATIV RECORD**

Pursuant to the Court's February 18, 2025, Scheduling Order, ECF No. 30, defendant, the United States, respectfully submits this response in opposition to plaintiff Bridgestone Americas Tire Operations, LLC's (Bridgestone) motion to complete[1] or supplement the administrative record. The documents that Bridgestone attempts to belatedly add to the record were neither requested by the Department of Commerce (Commerce) nor timely submitted by Bridgestone.

---

[1] We strongly dispute Bridgestone's characterization of its request to add documents to the existing administrative record as a "completion." The complete record of the proceedings was already provided to the Court via the certified court record. *See* ECF No. 25. Bridgestone believes Commerce should have put the documents at issue on the record (which Commerce reasonably, and within its discretion, declined to do); accordingly, it truly seeks to supplement, rather than complete, the record.

Furthermore, there are discrepancies between the documents proffered now and those actually offered at verification that should bar their inclusion in the administrative record. Accordingly, this Court should deny Bridgestone's motion.

## FACTUAL BACKGROUND

On May 20, 2024, Commerce published a preliminary determination in its antidumping investigation covering truck and bus tires from Thailand. *See Truck and Bus Tires from Thailand*, 89 Fed. Reg. 43,806 (Dep't of Commerce May 20, 2024) (preliminary determination), and accompanying Preliminary Decision Memorandum (PDM) (P.R. 218). Both before and after the issuance of the preliminary determination, Commerce provided Bridgestone with opportunities to report accurate sales data. *See Truck and Bus Tires from Thailand*, 89 Fed. Reg. 83,636 (Dep't of Commerce Oct. 17, 2024) (final determination), and accompanying Issues and Decision Memorandum (IDM) at 15-16 (P.R. 290) (citing *generally* Bridgestone IQR (P.R. 94-99, 116-122), Bridgestone Supplemental Questionnaire Responses (P.R. 139-140, 147-148, 173-174, 188, 204-205, 235-236)).

From June 10-14, 2024, and June 26-28, 2024, Commerce conducted an on-site verification of Bridgestone's sales questionnaire responses. *See* Bridgestone Sales Verification Report (C.R. 558). During verification, Commerce found that certain sales information provided by Bridgestone was reported in a form and manner so inaccurate that Commerce was unable to rely on the information as reported or successfully verify it. *See id.* at 2. Specifically, Commerce discovered numerous discrepancies, including significant, unresolved errors with respect to Bridgestone's reporting of U.S. market rebate expenses, U.S. destination of sales, and certain missing or unverifiable sales expenses. *Id.* Commerce also found several problems with the reporting of other sales expenses, which called into question the overall accuracy and

propriety of Bridgestone's application of the selling expense values found in its trial balances to its home market and U.S. sales. *Id.* And, while Bridgestone was afforded the opportunity to report corrections to its submitted databases at the beginning of both its sales verification and its cost verification, Commerce found that Bridgestone's information contained numerous undisclosed discrepancies and errors, all of which—with the exception of certain errors Commerce found with regard to Bridgestone's rebates in the U.S. market—were not properly disclosed to Commerce as items for correction. IDM at 16; Bridgestone Sales Verification Report at 2-5. Commerce ultimately found that numerous issues with Bridgestone's reporting, including the failure to report the requested information, merited the application of adverse facts available. IDM at 35.

## ARGUMENT

I.     Standard Of Review

"{J}udicial review of agency action is limited to the grounds invoked by the agency when taking the action." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1907 (2020) (citation omitted). And only "documents and materials directly or indirectly considered by agency decisionmakers" are properly part of the administrative record. *In re Section 301 Cases*, 570 F. Supp. 3d 1306, 1348 (Ct. Int'l Trade 2022) (quoting *Ammex, Inc. v. United States*, 62 F. Supp. 2d 1148, 1156 (Ct. Int'l Trade 1999). "The obvious corollary to this rule is that materials that were neither directly *nor* indirectly considered by agency decisionmakers, even if relevant, should not be included in the record." *Id.* (cleaned up) (emphasis in original).

The Court of Appeals for the Federal Circuit has explained that "the focal point for judicial review should be the administrative record already in existence, not some new record

made initially in the reviewing court." *Axiom Resource Mgmt., Inc. v. United States*, 564 F.3d 1374, 1379 (Fed. Cir. 2009) (quoting *Camp v. Pitts*, 411 U.S. 138, 142 (1973)). Therefore, supplementation of the record is appropriate only in limited circumstances. *See Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1277-78 (Fed. Cir. 2012) (allowing supplementation when the original record was tainted by fraud or when the agency decision was based on inaccurate data that the agency generating the data indicated were incorrect).

The Court "assumes the record is complete where it has been certified by the agency," *Invenergy Renewables LLC v. United States*, 476 F. Supp. 3d 1323, 1355 (Ct. Int'l Trade 2020) (citing *Giorgio Foods, Inc. v. United States*, 755 F. Supp. 2d 1342, 1346 (Ct. Int'l Trade 2011)). Accordingly, the Court should not order materials added to the administrative record "absent clear evidence to the contrary,'" *Ammex*, 62 F. Supp. 2d at 1156 (citation omitted). Importantly, the burden is on the moving party to "put forth concrete evidence and identify reasonable, non-speculative grounds for [its] belief that the documents were considered by the agency." *In re Section 301 Cases*, 570 F. Supp. 3d at 1348 (quoting *Fort Sill Apache Tribe v. Nat'l Indian Gaming Comm'n*, 345 F. Supp. 3d 1, 9 (D.D.C. 2018) (cleaned up) (alteration in original)); *see also Marcum v. Salazar*, 751 F. Supp. 2d 74, 78 (D.D.C. 2010) (moving party must "put forth concrete evidence that the documents it seeks to 'add' to the record were actually before the decisionmakers.").

II.   This Court Should Not Order Supplementation, As Commerce Properly Declined To Include The Documents In The Administrative Record And Did Not Rely On Them In Making Its Final Determination

    A.   Relevant Legal Framework

It is axiomatic that, while "Commerce has authority to place documents in the administrative record that it deems relevant, the burden of creating an adequate record lies with

interested parties and not with Commerce." *Nan Ya Plastics Corp. v. United States*, 810 F.3d 1333, 1337 (Fed. Cir. 2016) (quoting *QVD Food Co. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011)).  In furtherance of this, Commerce's regulations provide a specific and thorough framework for submitting factual information, and state that Commerce "will not consider or retain in the official record of the proceeding . . . untimely filed factual information."  19 C.F.R. § 351.302(d)(1)(i); *see also* 19 C.F.R. § 351.301(c).  The purpose of this regulatory framework is to "enable {Commerce} to review and analyze the factual information at the appropriate stage in the proceeding . . . rather than being required to review large amounts of factual information on the record of a proceeding when it is too late to adequately examine, analyze, conduct follow-up inquiries regarding and, if necessary, verify the information."  *Definition of Factual Information and Time Limits for Submission of Factual Information*, 78 Fed. Reg. 21,246, 21,247 (Dep't of Commerce Apr. 10, 2013).

      Commerce's regulations also address submissions of new factual information by parties to an investigation, with the type of factual information determining the time limit for submission to Commerce under 19 C.F.R. § 351.301(c).  Pertinent here, 19 C.F.R. § 351.301(c)(5) requires that new factual information be submitted either 30 days before the scheduled date of the preliminary results, or 14 days before verification, whichever is earlier.

      As part of the verification process, Commerce allows parties to submit minor corrections to information already submitted in their questionnaire responses.  *See* Bridgestone Verification Agenda at 2 (P.R. 241).  Crucially, verification is *not* an opportunity to submit new factual information or non-minor corrections.  *See Goodluck India Ltd. v. United States*, 11 F.4th 1335, 1343 (Fed. Cir. 2021) (affirming Commerce's practice "to accept corrective information at verification only for minor corrections to information already on the record."); *see also SeAH*

5

*Steel Corp. v. United States*, 659 F. Supp. 3d 1318, 1324 (Ct. Int'l Trade 2023). This Court has agreed, holding that, while Commerce abuses its discretion by rejecting "corrective information," including submissions "to correct information already provided {to Commerce}" or to "clarify{y} information already in the record," *Fischer S.A. Comercio v. United States*, 34 C.I.T. 334, 348, 700 F. Supp. 2d 1364, 1373, 1376 (2010), verification does not serve to "fill { } gap{s} caused by {a respondent's} failure to provide a questionnaire response or evidence requested during verification{.}" *Id*. at 1377. Verification "is intended to test the accuracy of data already submitted, {not} to provide a respondent with an opportunity to submit a new response{.}" *Tianjin Machinery Imp. & Exp. Corp. v. United States*, 353 F.Supp.2d 1294, 1305 (Ct. Int'l Trade 2004), a*ff'd*, 146 Fed. App'x 493 (Fed. Cir. 2005).

      B.    The Administrative Record Is Complete, And The Documents Provided At Verification Were Not Responsive To Commerce's Requests

Bridgestone argues that, for this Court to reach an informed decision on the issues detailed in its complaint, certain documents that are not properly part of the record should be considered by the Court. *See* Motion to Supplement at 2, ECF No. 31. These documents include: (1) documents that Bridgestone claims were specifically requested and reviewed by Commerce at verification, (2) documents Bridgestone claims were requested and reviewed by Commerce in their entirety, but only partially included on the record, and (3) documents Bridgestone claims are derived entirely from information in document (2), which were reviewed by Commerce but not included on the record. Bridgestone Motion at 2-3. This Court should decline to order Commerce to supplement the record with any of these categories of documents because the administrative record is complete and the documents were not relied on by Commerce in rendering its final determination.

Standard Commerce operating procedure for verifications, as explained in the verification agenda provided to respondents, states that: (1) the verification agenda is not necessarily all-inclusive and Commerce reserves the right to request any additional information or materials necessary for a complete verification; (2) verifiers will require copies of certain documents for the verification report; (3) it is the responsibility of the respondent to be fully prepared for this verification, such that if the company is not prepared to support or explain a response item at the appropriate time, the verifiers will move on to another topic, and if it is not possible to return to that item, Commerce may consider the item unverified; and (4) verification is not intended to be an opportunity for submission of new factual information.[2]  Bridgestone Verification Agenda).

Bridgestone officials and counsel were informed of these procedures, both in the verification agenda and at the commencement of verification, and could have requested clarification from Commerce at any point in time.  IDM at 16-19; Bridgestone Verification Agenda at 1-2.  Bridgestone did not do so; instead, it now seeks to "complete" or supplement the record with new information that it failed to timely put on the record, and that was not accepted by Commerce at any point in the investigation.  The Court should not condone this attempt, especially given that Bridgestone contests the application of adverse facts available, a realm in which the Federal Circuit has acknowledged that companies have limited opportunities to demonstrate cooperation, and confirmed that verification is not an opportunity for respondents to present new information missing from the record.  *See Goodluck India,* 11 F.4th at 1342-44.

---

[2] New information will be accepted at verification only when: (1) the need for that information was not evident previously, (2) the information makes minor corrections to information already on the record, or (3) the information corroborates, supports, or clarifies information already on the record.  *See* Bridgestone Verification Agenda.  Moreover, Commerce's acceptance of such information for examination at verification does not guarantee that it will be able to use it for a final determination.

Commerce explained in its final determination that "Bridgestone provided incomplete and unreliable information, notwithstanding the fact that it was given multiple opportunities to correct its data prior to verification," and that it had failed to report, or incorrectly reported, a number of items in its responses, did not provide information in the manner and form requested, and significantly impeded the proceeding, leaving Commerce unable to verify significant portions of Bridgestone's expenses, as well as the destination of its U.S. sales and its reporting of affiliate sales. IDM at 34-35.

Bridgestone argues that, with respect to its accounts receivable reports, Commerce should have included the reports (described as "reconciliation reports" in the IDM) because Commerce requested and reviewed them at verification. Motion to Supplement at 4-5. According to Bridgestone, Commerce misunderstood the content and nature of the reports at verification, and thus did not include them on the record. *Id.* at 5. But Commerce did not misunderstand, and it correctly declined to put the reports on the record.

In its supplemental questionnaire, Bridgestone reported that it had made sales to affiliated locations, but did not identify the sales to the affiliates in its U.S. sales database. IDM at 17. Thus, at verification, to confirm the sales sold to affiliated versus unaffiliated locations, Commerce requested that Bridgestone provide a reconciliation of its accounts receivable for sales made to affiliated locations that Bridgestone explained were either sold during the period of investigation or currently affiliated. *Id.* at 18. Upon receipt of this reconciliation, Commerce noted that the report did not include sales to all of the requested affiliated customers. *Id.* Bridgestone company officials were unable to contact the personnel who had created the report for Commerce and, given the short amount of time remaining for Commerce to verify any updated information and the incompleteness of the reconciliation, Commerce declined to accept

the reconciliation as a completeness test on the record. *Id.; see also* Bridgestone Sales Verification Report at 17. Commerce's rejection of the report was reasonable and within its discretion; this Court should not impinge on that discretion by granting Bridgestone's request to supplement the record with a lawfully rejected document. IDM at 20.

Bridgestone also argues that it provided complete customer-specific rebate information at verification, but that Commerce only accepted certain sample pages for the record because the information was not appropriately collated or sorted. Motion to Supplement at 6. Bridgestone alleges that Commerce then claimed it could not derive customer-specific rebate information from the document because only a sample selection of the information was on the record, even though the information had been provided in the correct form and manner—a pivot table—and Commerce verifiers had purportedly reviewed it. *Id.* at 7-8. But the information Bridgestone provided was *not* in the form and manner requested. Moreover, the rebate information and pivot table that Bridgestone now seeks to add to the record do not appear to be the same documentation reviewed by Commerce at verification.[3]

The worksheet in the U.S. rebates verification exhibit titled "POI Payout Amounts by Customer" contains the sum total values of each type of rebate program in Bridgestone's rebate tracking system and does not refer to any specific customer. IDM at 21 (citing Bridgestone Sales Verification Report at Exh. CEP-VE-10). The list of total rebates by month and customer is a report generated from Bridgestone's rebate tracking system that contains a list of rebate agreements, and the settled amount for each month of the period of investigation. *Id.* At

---

[3] Regardless of Bridgestone's view of the utility of the documentation Commerce requested, Bridgestone was obligated to provide the information requested to the best of its ability. This Court has opined that "the decision to select a particular method of verification rests solely within the agency's sound discretion." *See Floral Trade Council v. United States*, 822 F. Supp. 766, 772 (Ct. Int'l Trade 1993).

verification, Commerce requested the smallest and largest total values of each type of rebate on a per-customer basis. IDM at 21-22. While it may have been possible to derive the requested information from the report, the report itself did not provide the requested information. *Id.* The report was obtained from Bridgestone's rebate system, and Commerce requested it in order to understand the total universe of rebates tracked by Bridgestone. *Id.* The full report would have required organization and sorting by customer and rebate type to provide the information actually requested, collating the values using other data such as customer codes and classification of rebates. *Id.* Thus, the information provided at verification was not in the form and manner that Commerce requested and was not easily discernible to Commerce verifiers.

Bridgestone has acknowledged, such information was readily available; however, it was not provided in the form and manner requested prior to the conclusion of verification. *See* IDM at 21-22; Bridgestone Case Brief at 6-33 (P.R. 274). Accordingly, Commerce appropriately considered the rebate expenses as unverified, and did not accept the provided rebate information for the record. IDM 21-22. The Court should not allow Bridgestone to circumvent Commerce's verification procedures by allowing parties to belatedly cure defects in their verification documents.

Moreover, with respect to Bridgestone's claim that the documentation should be put on the record because Commerce verifiers reviewed them, *see* Motion to Supplement at 7-8, Bridgestone cannot demonstrate that it even provided that same information for the verifiers to review, much less that Commerce officials actually reviewed them (and relied on them). IDM at 21-22. Bridgestone alleges, without any evidence, that Commerce officials must have reviewed the documents because other relevant information is on the record. Motion to Supplement at 7-8 ("the summary table was in fact reviewed and used by Commerce because Commerce pulled

10

documentation for the largest and smallest amounts . . . and placed that information on the record{.}). But Commerce collected sample pages of the rebate report system for the sole purpose of indicating—for the record—that Commerce generally saw Bridgestone's rebate system (which, as noted above, contained a list of rebate agreements and the settled amount for each month of the period of investigation). While Commerce officials viewed a summary table within the rebate report system, they did *not* view the pivot table that Bridgestone is now attempting to add to the record. IDM at 21-22. The Court should not simply accept Bridgestone's claim to the contrary. Furthermore, Commerce cannot reasonably ensure that the documents Bridgestone attempts to supplement the record with are the exact documents presented at verification, in the same exact form and manner previously provided.

Finally, Bridgestone claims that Commerce verifiers viewing a summary table on a computer, using Excel software, is equivalent to Bridgestone providing a copy for inclusion on the record as a verification exhibit. Motion to Supplement at 7-8. But again, the summary table itself did not provide the information requested by Commerce; therefore, Commerce reasonably declined to accept it for the record as a verification exhibit.

  C. <u>The Documents Are Not Necessary For Adequate Judicial Review</u>

Bridgestone fails to establish that the limited circumstances warranting supplementation apply. At most, it claims that supplementation "would serve judicial efficiency and facilitate judicial review{.}" But the Court's review of Bridgestone's arguments would not be so frustrated by the lack of these documents that the Court should override Commerce's discretion and order supplementation of an already complete record. First, Bridgestone is not prevented from arguing that Commerce improperly rejected certain information at verification simply because such documents are not part of the record. Indeed, plaintiffs frequently argue in their Rule 56.2 briefs, and without also moving to place those documents on the record, that

11

Commerce erred by not accepting certain documents for the record. If the Court denies Bridgestone's motion—which it should—Bridgestone can still argue in its Rule 56.2 brief that Commerce should not have declined to accept the documentation.

Moreover, Commerce's application of total adverse facts available was not solely based on this issue. Rather, Commerce's finding was based on five issues, and extensively discussed in its final determination: (1) Bridgestone's failure to provide certain information requested at verification; (2) Bridgestone's failure to accurately report rebates in the U.S. market; (3) Bridgestone's failure to accurately report the destination of its U.S. sales; (4) Bridgestone's failure to report certain warehousing expenses; and (5) errors and inaccuracies with regard to the reporting of certain of Bridgestone's expenses. IDM at 15-37. While some of contested documentation overlaps with other findings, *e.g.,* Bridgestone's U.S. reporting, the bases for Commerce's adverse facts available determination were distinct, and Bridgestone's failure to provide the documentation in the form and manner requested for its U.S. rebates was only one of multiple issues Commerce found with Bridgestone's rebate reporting. IDM at 15-37. Accordingly, Commerce's determination to apply total adverse facts available to Bridgestone did not depend solely—or even primarily—on Bridgestone's failure to provide the requested information at verification.

## CONCLUSION

For these reasons, we request that this Court deny Bridgestone's motion to supplement the administrative record.

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

12

<table>
<tr><td></td><td>PATRICIA M. McCARTHY<br>Director<br><br><u>/s/Franklin E. White, Jr. (by Claudia Burke)</u><br>FRANKLIN E. WHITE, JR.<br>Assistant Director<br><br><u>/s/Sosun Bae</u></td></tr>
<tr><td>OF COUNSEL:<br><br>AYAT MUJAIS<br>Senior Attorney<br>U.S. Department of Commerce<br>Office of the Chief Counsel for<br>Trade Enforcement & Compliance<br>Washington, D.C. 20230</td><td>SOSUN BAE<br>Senior Trial Counsel<br>United States Department of Justice<br>Civil Division<br>Commercial Litigation Branch<br>P.O. Box 480<br>Ben Franklin Station<br>Washington, D.C. 20044<br>Tel: (202) 305-7568<br>Fax: (202) 514-8624</td></tr>
<tr><td>March 18, 2025</td><td>Attorneys for Defendant</td></tr>
</table>

## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE**

| | |
|---|---|
| BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC, <br><br>　　　　　Plaintiff, <br><br>　v. <br><br>UNITED STATES, <br><br>　　　　　Defendant, <br><br>　and <br><br>UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC, <br><br>　　　　　Defendant-Intervenor. | Court No. 24-00263 |

## **ORDER**

Upon consideration of plaintiff's motion to supplement the record, defendant and defendant-intervenor's responses thereto, and all other pertinent papers, it is hereby

ORDERED that plaintiff's motion is DENIED.

Dated:_____                              _____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　JUDGE