# UNITED STATES COURT OF INTERNATIONAL TRADE
Before: The Honorable Gary S. Katzmann, Judge

| | |
|---|---|
| BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC, <br><br> *Plaintiff*, <br><br> v. <br><br> UNITED STATES, <br><br> *Defendant*, <br><br> and <br><br> UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC, <br><br> *Defendant-Intervenor*. | Court No. 24-00263 |

**DEFENDANT-INTERVENOR'S RESPONSE IN OPPOSITION TO PLAINTIFF'S AMENDED MOTION TO COMPLETE OR SUPPLEMENT THE RECORD**

Defendant-Intervenor, the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC ("USW"), respectfully submits this response in opposition to the amended motion to complete or supplement the record filed by Plaintiff Bridgestone Americas Tire Operations, LLC ("Plaintiff") in the above-captioned action. *See* Pl.'s Am. Mot. to Complete or Supplement Record, Court No. 24-00263, ECF Nos. 33 and 34 ("Bridgestone Motion"). As demonstrated below, Plaintiff has neither shown that the record is in any way incomplete nor that bad faith or improper behavior on the part of U.S. Department of Commerce ("Commerce") requires supplementation of the record. Granting the extraordinary relief that Plaintiff seeks would contravene Commerce's well-

established verification procedures and longstanding precedent of the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit"). Therefore, the USW respectfully requests that the Court deny Plaintiff's motion to complete or supplement the administrative record.

## ARGUMENT

Plaintiff commenced this action to contest Commerce's verification results and the agency's ultimate decision to apply total facts available with an adverse inference in determining the dumping margin for mandatory respondent Bridgestone Corporation ("Bridgestone") in the antidumping duty investigation of truck and bus tires from Thailand. *See* Compl. ¶¶26–122, ECF No. 10 (Dec. 23, 2024). On February 3, 2025, Commerce submitted a certified index that provided the Court with a "*complete* list of the public and proprietary documents" from the underlying investigation that constitute the administrative record for purposes of judicial review. *See* Declaration of Jonathan Schueler ¶3, ECF No. 25-3 (Feb. 3, 2025) (emphasis added). By its motion, Plaintiff claims that certain documents were either not listed (referred to as "Document Type 1") or included only in sample form rather than in their entirety (referred to as "Document Type 2" and "Document Type 3") in the administrative record index. *See generally* Bridgestone Motion. Plaintiff argues that, for all three document types, "the legal standard for completion or supplementation of the record is met," alleging that these documents were presented to and considered by Commerce at verification and, according to Plaintiff, should have been included as verification exhibits. Plaintiff's argument is devoid of merit and is based on a fundamental misunderstanding regarding the documents that Commerce is required to include as part of the administrative record.

"Where an agency presents a certified copy of the complete administrative record, as was done in this case, 'the court assumes the agency properly designated the Administrative

Record absent clear evidence to the contrary.'" *Defenders of Wildlife v. Dalton*, 24 C.I.T. 1116, 1119 (2000) (quoting *Ammex, Inc. v. United States*, 62 F. Supp. 2d 1148, 1156 (Ct. Int'l Trade 1999)). To prevail on "a motion to complete the administrative record, 'a party must do more than simply allege that the record is incomplete. Rather, a party must provide the Court with reasonable, non-speculative grounds to believe that materials considered in the decision-making process are not included in the record.'" *Id.* (quoting *Ammex*, 62 F. Supp. 2d at 1156–57). The movant bears the burden "to provide evidence that the appropriate decisionmakers either directly or indirectly considered the missing documents while making their decision." *Id.* Supplementation of the record is extremely rare, because "the focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts*, 411 U.S. 138, 142 (1973). Indeed, the Federal Circuit has explained that "supplementation of the record should be limited to cases in which the omission of extra-record evidence precludes effective judicial review." *Axiom Resource Management, Inc. v. United States*, 564 F.3d 1374, 1381 (Fed. Cir. 2009) (internal quotations and citation omitted).

      Plaintiff has failed to demonstrate that the certified administrative record index submitted in this case is incomplete or that the record should be supplemented. The administrative record is statutorily defined to include "a copy of all information presented to or obtained by the Secretary, the administering authority, or the Commission during the course of the administrative proceeding{.}" 19 U.S.C. § 1516a(b)(2)(A)(i). Consistent with this statutory definition, Commerce's implementing regulation requires it to maintain "the official record of each segment of the proceeding" that includes "all factual information, written argument, or other material developed by, presented to, or obtained by the Secretary during the course of a proceeding that pertains to the proceeding," as well as "government memoranda pertaining to the proceeding,

3

memoranda of ex parte meetings, determinations, documents published in the Federal Register, and transcripts of hearings." 19 C.F.R. § 351.104(a)(1).

The "government memoranda pertaining to the proceeding" referenced above include verification reports, and the regulations specify "the contents of a verification report." 19 C.F.R. § 351.307(a). Specifically, the verification report "will report the methods, procedures, and results of a verification … prior to making a final determination in an investigation or issuing final results in a review." *Id.* § 351.307(c); *see also* Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R. Rep. No. 103-316, vol. 1, at 868, *reprinted in* 1994 U.S.C.C.A.N. 4040, 4197 ("The regulations also should require Commerce, consistent with its current practice, to report the methods, procedures, and results of the verification prior to making its final determination in an investigation{.}"). For decades, the courts have recognized that Commerce is given wide latitude in its verification procedures. *See Micron Tech., Inc. v. United States*, 117 F.3d 1386, 1396 (Fed. Cir. 1997) (citing *Am. Alloys, Inc. v. United States*, 30 F.3d 1469, 1475 (Fed. Cir. 1994)). Additionally, Commerce is entitled to the presumption of regularity, which "attaches to all administrative action" and "presumes that public officers have properly discharged their official duties" in the absence of clear evidence to the contrary. *See, e.g.*, *Pakfood Public Co. v. United States*, 753 F. Supp. 2d 1334, 1345 (Ct. Int'l Trade 2011) (citing *Seneca Grape Juice Corp. v. United States*, 367 F. Supp. 1396, 1404 (Cust. Ct. 1973)). This presumption applies to Commerce's verification of Bridgestone, and it is presumed that the Commerce verifiers faithfully discharged their duties and accurately described their observations and analysis of Bridgestone's data in the verification report.

Thus, according to the statute and regulation, the purpose of the verification report is to disclose "the methods, procedures, and results of the verification." Plaintiff takes the untenable

4

position that the administrative record in this case *must* include certain materials that Bridgestone allegedly presented to Commerce at verification. Nothing in the statute or the regulation *requires* Commerce to include in its verification report all the documents that were presented during verification. Commerce has previously explained that, "{b}ecause of the large number of documents typically examined during the course of verification," it "does not necessarily take all documents reviewed as verification 'exhibits.'" *Certain Cold-Rolled Steel Flat Products From India: Final Determination of Sales at Less Than Fair Value*, 81 Fed. Reg. 49,938 (Dep't Commerce July 29, 2016), and accompanying Issues and Decision Memorandum ("IDM") at Comment 2.

       The verification exhibits may consist of relevant sample documents or excerpts of documents that were examined at verification. *See Notice of Final Determination of Sales at Less Than Fair Value and Negative Critical Circumstances Determination: Bottom Mount Combination Refrigerator-Freezers From the Republic of Korea*, 77 Fed. Reg. 17,413 (Dep't Commerce Mar. 26, 2012) and accompanying IDM at Comment 6 (citing a verification exhibit with "an excerpt of the documents that were examined"); *Aluminum Extrusions From the People's Republic of China: Final Affirmative Countervailing Duty Determination*, 89 Fed. Reg. 80,526 (Dep't Commerce Oct. 3, 2024), and accompanying IDM at Comment 6 (stating that only "certain" documents examined at verification are contained in verification exhibits); *Final Affirmative Countervailing Duty Determination: Stainless Steel Bar From Italy*, 67 Fed. Reg. 3,163 (Dep't Commerce Jan. 23, 2002), and accompanying IDM at Comment 9 (including only a "sample" of information reviewed at verification as a verification exhibit); *Brass Rod From the Republic of Korea: Final Affirmative Determination of Sales at Less Than Fair Value*, 89 Fed. Reg. 29,298 (Dep't Commerce Apr. 22, 2024), and accompanying IDM at Comment 7

5

(collecting "samples" of certain records examined at verification to include as verification exhibits). This approach of attaching relevant sample documents and excerpts of documents is more than sufficient for Commerce to fulfill its obligation to disclose "the methods, procedures, and results of the verification."

Importantly, Plaintiff has not shown why the materials it seeks to include in the administrative record are necessary for the Court to perform its function or how the absence of these particular materials somehow precludes effective judicial review. In fact, Plaintiff cannot make such a showing. The Federal Circuit established long ago that there is no legal requirement for the administrative record to "contain the financial documents that would permit other parties to recreate Commerce's verification" and "not all the documents reviewed in the verification process are made part of the record{.}" *Micron*, 117 F.3d at 1397. In *Micron*, the Federal Circuit explicitly stated that "Commerce is not required to make all of respondent's financial documents part of the record, but is only required to 'disclos{e} its methods' of verification." *Id.* at n.16 (citing *China Nat'l Metals & Minerals Imp. & Exp. Corp. v. United States*, 674 F. Supp. 1482, 1486 n.2 (Ct. Int'l Trade 1987)). This longstanding and binding precedent is a fatal blow to Plaintiff's assertion that documents Commerce allegedly reviewed at verification must be included in the administrative record for purposes of judicial review. The *Micron* decision effectively precludes completion or supplementation of the record on the basis advanced by Plaintiff.

Furthermore, Plaintiff misleadingly states that Commerce relied on three different document types in reaching a final determination. Plaintiff seeks to include Document Type 1, which Plaintiff describes as pages from accounts receivable documentation that were allegedly

6

reviewed by Commerce during verification.[1] *See* Bridgestone Motion at 4–6 and Ex. 2, Att. 1. Plaintiff asserts that Commerce "used the absence of this document from the record as the basis to claim the agency was unable to verify the accuracy and completeness of Bridgestone's sales database and accounting systems." *Id.* at 5. However, Bridgestone glosses over the undisputed fact that at verification Bridgestone officials "were unable to contact the personnel that had created the {accounts receivable} report for Commerce." *Id.* (quoting Bridgestone Sales Verification Report at 17, P.R. 266, C.R. 558 (Aug. 23, 2024)). Prior to verification, Commerce instructed Bridgestone to ensure that personnel who are knowledgeable about the data are made available to the Commerce verifiers. *See* Sales Verification Agenda at 2 and 4, P.R. 241, C.R. 482 (June 3, 2024). Despite this clear instruction, Bridgestone did not have the appropriate personnel available when the Commerce verifiers had questions that needed answers before proceeding further. As Commerce explained, it did not accept the incomplete reconciliation documentation because Bridgestone "was unable to locate the appropriate personnel able to amend the exhibit or answer Commerce's questions prior to the conclusion of Bridgestone's CEP sales verification." *See Truck and Bus Tires From Thailand: Final Affirmative Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances, in Part*, 89 Fed. Reg. 83,636 (Dep't Commerce Oct. 17, 2024), and accompanying IDM at 20. Placing the accounts receivable documentation on the record at this point would not remedy Bridgestone's failure to cooperate during the verification process.

---

[1] Plaintiff describes Document Type 1 as consisting of "Accounts Receivable ('A/R') reports Commerce requested and reviewed at verification." Bridgestone Motion at 4. The USW notes that Plaintiff erroneously states that "Commerce describes the AR reports in question as **'reconciliation reports'** and discusses the agency's understanding of the information reflected in these reports at length." *Id.* at 5 (emphasis added). To the best of the USW's knowledge, Commerce did not refer to any set of documents as "reconciliation reports" in the sales verification report. *See* Bridgestone Sales Verification Report, P.R. 266, C.R. 558 (Aug. 23, 2024).

Plaintiff similarly attempts to obfuscate the record as it relates to Commerce's verification of Bridgestone's rebates. Plaintiff seeks to include Document Types 2 and 3, which Plaintiff describes as customer-specific rebate information that was allegedly examined at verification but not included as part of Verification Exhibit 10 and a pivot table that was allegedly used by the Commerce verifiers to facilitate their work. *See* Bridgestone Motion at 6–8 and Ex. 2, Att. 2 & 3. According to Plaintiff, these documents would show that Bridgestone complied with Commerce's request for a breakdown of the largest and smallest total values received by Bridgestone's customers in the United States for each type of rebate. *Id.* However, Plaintiff also admits that Commerce did, in fact, include sample pages of Document Type 2 in Verification Exhibit 10. *Id.* at 6; *see also* Bridgestone CEP Sales Verification Exhibits at CEP-VE-10, P.R. 255, C.R. 521 (July 8, 2024). These sample pages consist of "raw" company data from Bridgestone's rebate tracking system containing customer-specific rebate information. Commerce explained in the final determination that the raw data did not provide the requested information because "{t}he full report required organization and sorting by customer and rebate type to provide the information requested, collating the values using other data such as Bridgestone's customer codes and classification of rebates." IDM at 21. The information that Commerce requested was "the smallest and largest *total* values of each *type* of rebate on a per-customer basis." *Id.* Thus, the sample pages placed on the record by Commerce were sufficient to explain the methods, procedures, and results of a verification.

Plaintiff insists that it provided the information in the form of a summary table entitled "POI Payout Amounts by Customer," which was also included in Verification Exhibit 10, but Commerce explained that this summary table "contains the sum total values of each type of rebate program in Bridgestone's rebate tracking system" and "does not refer to any specific

8

customer whatsoever." IDM at 21. Plaintiff claims that "{t}his statement is incorrect" and that the information was "organized and sorted for the very purpose described." Bridgestone Motion at 7. It asserts that the requested information can be found in a pivot table that it refers to as Document Type 3. *Id.* at 7–8. However, based on a comparison of Commerce's Verification Exhibit 10 and Plaintiff's proffered document, it is unclear whether Bridgestone actually presented the Commerce verifiers with the version of the pivot table that is appended to Bridgestone's motion (or any customer-specific summary other than the table entitled "POI Payout Amounts by Customer" in Verification Exhibit 10). Plaintiff *assumes* that Commerce "must have reviewed the pivot table in order to select the sample documentation included in the verification exhibit." Bridgestone Motion at 8. But a litigant cannot rely on speculative grounds to prevail on a motion to complete or supplement the record. *See Defenders of Wildlife*, 24 C.I.T. at 1119 (quoting *Ammex*, 62 F. Supp. 2d at 1156–57).

As a final note, the USW emphasizes that the extraordinary relief that Plaintiff seeks is seldom granted and "{t}he purpose of limiting review to the record actually before the agency is to guard against courts using new evidence" in a way that would convert the applicable standard of review under 19 U.S.C. § 1516a(b)(1)(B)(i) (*i.e.*, substantial evidence and otherwise in accordance with law) into *de novo* review. Commerce – not the Court – is charged with the statutory duty of conducting verification. The Federal Circuit has described verification as "a point of no return." *Goodluck India, Ltd. v. United States*, 11 F.4th 1335, 1343–44 (Fed. Circ. 2021). Given Bridgestone's numerous failures at verification that resulted in the application of total adverse facts available, it is understandable why Bridgestone might desire a "do-over" and make every attempt to recreate Commerce's verification in this appeal. However, Bridgestone cannot undo what has already transpired and ask the Court to usurp the agency's role and

conduct its own verification. Bridgestone's attempt to "complete" or supplement the record is tantamount to seeking *de novo* review through the back door, which is not permitted under the standard of review that actually applies in this case. *See Axiom Resource Management, Inc.*, 564 F.3d at 1380 (Fed. Cir. 2009) ("The purpose of limiting review to the record actually before the agency is to guard against courts using new evidence to 'convert the "arbitrary and capricious" standard into effectively *de novo* review.'") (quoting *Murakami v. United States*, 46 Fed. Cl. 731, 735 (2000), *aff'd*, 398 F.3d 1342 (Fed. Cir. 2005)).

## CONCLUSION

For the reasons set forth above, we respectfully request that the Court deny Plaintiff's Amended Motion to Complete or Supplement the Record.

Respectfully submitted,

/s/ Luke A. Meisner
Roger B. Schagrin
Luke A. Meisner
Elizabeth J. Drake
Saad Y. Chalchal*
Nicholas C. Phillips**

**SCHAGRIN ASSOCIATES**
900 7th Street, N.W.
Suite 500
Washington, DC 20001
(202) 223-1700

Dated: March 18, 2025

*Counsel to the USW*

*Admitted only in New York and New Jersey. Practice limited to matters before federal courts and agencies.

** Admitted only in New York. Practice limited to matters before federal courts and agencies.

UNITED STATES COURT OF INTERNATIONAL TRADE
Before: The Honorable Gary S. Katzmann, Judge

| | |
|---|---|
| BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC, <br><br> *Plaintiff*, <br><br> v. <br><br> UNITED STATES, <br><br> *Defendant*, <br><br> and <br><br> UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC, <br><br> *Defendant-Intervenor*. | Court No. 24-00263 |

**ORDER**

Upon consideration of the Amended Motion to Complete or Supplement the Record filed by the plaintiff, the responses thereto filed by the defendant and the defendant-intervenor, all other papers and proceedings herein, and upon due deliberation, it is hereby

**ORDERED** that the motion is denied; and it is further

**ORDERED** that the parties shall confer and file a proposed briefing schedule within 10 days after the issuance of this order.

_____
Gary S. Katzmann, Judge
U.S. Court of International Trade

Dated: _____, 2025
      New York, New York