# UNITED STATES COURT OF INTERNATIONAL TRADE

## BEFORE:  THE HONORABLE GARY S. KATZMAN, JUDGE

| | |
|---|---|
| BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Court No. 24-00263 |
| ) | |
| UNITED STATES, ) | PUBLIC DOCUMENT |
| ) | |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| United Steel, Paper and Forestry, Rubber, Manufacturing, ) | |
| Energy, Allied Industrial and Service Workers ) | |
| International Union, AFL-CIO, CLC ) | |
| ) | |
| Defendant-Intervenors. ) | |

## MOTION FOR ORAL ARGUMENT

On behalf of Plaintiff, Bridgestone Americas Tire Operations, LLC ("Bridgestone"), respectfully moves this Honorable Court for oral argument in the above-captioned matter. Plaintiff submits that oral argument will provide an opportunity to address Defendant, United States ("Defendant" or "the Government") and Defendant-Intervenor's substantive arguments, filed in opposition to Bridgestone's procedural motion regarding completion of the record, without causing significant delay in the proceedings or expending unnecessary judicial resources. Plaintiff has conferred with Defendant and Defendant-Intervenor on oral argument. Defendant and Defendant-Intervenor take no position and defer to the court's discretion on whether to grant Plaintiff's motion for oral argument.

Oral argument is appropriate here considering the nature and extent of Defendant and Defendant-Intervenor's combined 22 pages of argument filed in response to Plaintiff's Motion to Complete or Supplement the Record. The Government's reply brief presents deeply troubling positions warranting a hearing. Oral argument will facilitate the Court's understand of the documents Plaintiff seeks to include in the record and allow Plaintiff to make clear that these are the very documents requested, obtained, examined and relied upon by Commerce to make two central findings in its final determination. One, Commerce determined that an accounts receivable report provided by Bridgestone was incomplete. Second, Commerce determined that Bridgestone did not provide requested rebate information on a customer-specific basis. These two finding are central to Commerce's application of adverse facts available with respect to Bridgestone. Plaintiffs submit, and this Court has held, that the "agency cannot ignore relevant information which is before it, and the reviewing court must be in a position to determine if it had done so." Floral Trade Council of Davis, Cal. v. United States, 709 F. Supp. 229, 230 (Ct. Int'l Trade 1989). "The question to be asked is whether the decision can be reviewed properly without certain documents." Id. Here, notwithstanding the protestation of the Government (and defendant-intervenors), the Court cannot review properly the decision of whether the documents should be treated as part of the administrative record without the full context, which can best be provided in oral argument.

With respect to the account receivable report and the complete rebate report (AR and rebate reports"), meaningful judicial review requires the inclusion of these documents in the judicial record. The relevant legal question for completion or supplementation of the record is whether the documents the moving party seeks to add constitute "information presented to or obtained by the administering authority …during the course of the administrative proceedings."

There can be no serious dispute that these documents were not only presented to Commerce, but their contents were negatively (and incorrectly) characterized by the agency and used as justification for AFA. Indeed, not incorporating the AR and rebate report into the judicial record precludes judicial review of Commerce's underlying finding that the documents were incomplete and instead allow Commerce to unilaterally declare the accuracy of its own finding, without any evidence, let alone substantial evidence, supporting that finding. In this case, that would result in Commerce's two core findings justifying its AFA determination being exempt from judicial review.

Moreover, the Government's opposition to completion of the record is premised on a series of allegations that defy logic and conflict with the administrative record. For example, the Government asks this court to accept its *suggestion* that Bridgestone provided only three-pages of a thirty-five-page report with precisely the solicited rebate information. The word suggestion is used purposefully. The Government never says that Bridgestone refused to provide the other pages. Instead, the Government simply states that only three pages are in the verification report, leaving the reader to infer that the other pages were requested, but not provided. The three pages included in the verification are the first, the last and the middle pages of the report, clearly indicating that the full report was available and reviewed, but only three pages were included in the verification report. It is the remaining pages of the document that Bridgestone seeks to add to the record.

Then the Government asks the Court to accept its allegation that Bridgestone did not provide a summary report allowing Commerce to identify the highest and lowest rebate customers, despite the government having included a summary chart labeled "POI Rebate Payments by Customer" in the verification report. And then the Government asks that this Court

3

accept the allegation that Bridgestone did not provide a complete detailed report, or summary report, that would allow Commerce to identify the highest and lowest rebate customers, despite Commerce having somehow managed to select exactly those two customers for further inquiry. Motion to Complete the Record at pages 6-7, citing CEP Verification Exhibit 10.  The odds of Commerce making such a selection at random is extraordinarily low. A review of the underlying documents will clearly reveal that Commerce selected the highest and lowest rebate customers from among the list of hundreds of customers, and once selected, Commerce solicited additional information on those customers. Thus, not only did Commerce review the complete list of highest and lowest rebate customers, the verifiers *used* that list to solicit additional information. This is directly contrary to the Government's claim that such as list was never provided.

      That both Defendant and Defendant-Intervenor have expended resources arguing about the content of the documents Bridgestone seeks to include in the record and have gone on to argue the appropriateness of Commerce's adverse facts available (AFA) determination against Plaintiff is telling.  The situation is analogous to Hyundai Electric & Energy Systems Co., Ltd. v. United States. 477 F. Supp. 3d 1324 (Ct. Int'l Trade 2020).  In that case, the DOC applied total AFA to the respondent (plaintiff Hyundai), based on a conclusion that Hyundai's U.S. sales database was incomplete because it did not include one product (a large power transformer ("LPT")) in the U.S. sales database.  Id. at 1327.  "Hyundai stated that production for the LPT was transferred from Korea to the United States and, thus, its sales database was reliable."  Id.  "At verification, a Commerce analyst requested information supporting this statement."  Id.  "Hyundai provided two documents: a test report … and a nameplate document …, both related to the sale of the LPT.  Id. at 1327-28.  "The two Commerce analysts determined that the documents did not contain information regarding where the LPT was produced and, for that

reason, did not include the documents as verification exhibits." Id. at 1328. "Commerce did not discuss either document in its determination…. Commerce did discuss other evidence related to this issue and determined that such evidence failed to substantiate Hyundai's contention that the LPT was manufactured in the United States." Id. "Thus, Commerce found that Hyundai's failure to report the importation and sale of this LPT undermined the reliability of Hyundai's U.S. sales database, warranting total AFA." Id.

Hyundai moved to supplement the administrative record with additional documents, including certain declarations. Id. at 1327-28. The Court ultimately held that the "the administrative record is incomplete because it lacks information presented to and evaluated by Commerce officials in relation to the agency's decision regarding the place of production for the LPT in question." The Court noted that the Commerce analyst in question did indeed request, obtain, and consider a version of the test report and nameplate at issue but did not include them in the exhibits to the verification report. Id. at 1330 The Court held that "[u]nder these circumstances, the analyst's consideration of the documents was sufficient to trigger Commerce's obligation to include the documents presented to him in the administrative record." Id. As a result, according to the Court, "without the documents, the administrative record is incomplete." Id.

As in Hyundai, there can be no serious dispute here that these documents were not only presented to Commerce, but were considered by the analysts at verification, relied upon to request supporting documentation, and later, were mischaracterized to justify the application of adverse inferences against Bridgestone. For the Court to conduct the careful analysis necessary to determine whether to grant or deny Bridgestone's motion to complete the record, the Court needs to grapple with the full import of the documents that Bridgestone proffered in its motion to

5

complete the record. The best way for the Court to do that is to hold oral argument, so that the parties can explain their understanding of the implications of these documents and what happened at verification when Bridgestone provided these documents to the Commerce verification team. Counsel for Plaintiff also notes that the Government's response comes troublingly close to accusing Plaintiff's counsel of making false statements to this Court and seeks and opportunity to affirm the statements in the affidavits included in the original motion.[1]

For these reasons, we ask the Court to grant this motion and further defer to the Court on timing. In the alternative, we request that Bridgestone be allowed to file a reply brief to assist the Court in sorting out several diametrically-opposed assertions by the parties with regard to the documents at issue.

Respectfully submitted,

/s/ Daniel Cannistra
Daniel Cannistra, Esq.
Pierce Lee, Esq.
Valerie Ellis, Esq.

Crowell & Moring
1001 Pennsylvania Ave., N.W.
Washington, D.C. 20004

*Counsel for Bridgestone Americas Tire Operations, LLC*

---

[1] The Government's response in opposition claims that "the rebate information and table that Bridgestone now seeks to add to the record do not appear to be the same documentation reviewed at verification (accompanying footnote omitted)." Opposition at page 9. See also, page 11 ("Commerce cannot reasonably assure that the documents Bridgestone attempts to {add} are the exact same documents presented at verification."). Plaintiff's counsel provided affidavits directly affirming that these are the very same documents provided to Commerce, and questioning the veracity of the documents effectively alarmingly suggests that Plaintiff's counsel have filed false affidavits in a federal court.