Slip Op. 25-82

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC,**<br><br>  Plaintiff,<br><br> v.<br><br> **UNITED STATES,**<br><br>  Defendant,<br><br> and<br><br> **UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC,**<br><br>  Defendant-Intervenor. | Before: Gary S. Katzmann, Judge<br>Court No. 24-00263 |

### AMENDED OPINION AND ORDER

[ The court grants Plaintiff's Motion to Complete the Record and denies Defendant's Motion to Consolidate without prejudice to renewal. ]

Dated: July 3, 2025

Daniel Cannistra, Crowell & Moring, of Washington, D.C., argued for the Plaintiff Bridgestone Americas Tire Operations, LLC. With him on the briefs were Pierce Lee and Valerie Ellis.

Sosun Bae, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., argued for Defendant United States. With her on the briefs were Yaakov M. Roth, Acting Assistant Attorney General, Patricia M. McCarthy, Director, and Franklin E. White, Jr., Assistant Director. Of counsel on the brief was Ayat Mujais, Senior Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, D.C.

Saad Y. Chalchal, Schagrin Associates, of Washington, D.C., argued for Defendant-Intervenor

United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC. With him on the briefs were Roger B. Schagrin, Luke A. Meisner, Elizabeth J. Drake, and Nicholas C. Phillips.

Katzmann, Judge: Two motions are before the court. One is a motion by Plaintiff Bridgestone Americas Tire Operations, LLC ("Bridgestone") to "complete" the record in this case to include three documents that the U.S. Department of Commerce ("Commerce") declined to place on the record during the proceedings underlying an antidumping determination. See Pl.'s Am. Mot. to Complete or Suppl. the R., Feb. 25, 2025, ECF No. 33 ("Motion to Complete").[1] The other is a motion by Defendant the United States ("the Government") to consolidate this case with another that involves a different plaintiff's challenge to the same antidumping determination. See Def.'s Mot. to Consolidate, Mar. 4, 2025, ECF No. 35.

For the reasons explained below, the court grants the Motion to Complete and denies the Motion to Consolidate without prejudice to renewal.

## BACKGROUND

### I. *History of the Administrative Proceeding*

Bridgestone is a U.S. division of a tire company that imports tires into the United States. Confidential Compl. ¶ 6, Dec. 23, 2024, ECF No. 11 ("Compl."). Some of these imports are subject to an antidumping duty order that Commerce issued upon "determin[ing] that certain truck and bus tires from Thailand are being, or are likely to be, sold in the United States at less than fair value." Truck and Bus Tires from Thailand: Final Affirmative Determination of Sales at Less Than Fair Value, 89 Fed. Reg. 83636, 83636 (Dep't Com. Oct. 17, 2024) ("Final Determination");

---

[1] Bridgestone has clarified that it seeks to complete, rather than supplement, the record. See Pl.'s Resp. to OAQs at 3, Apr. 7, 2025, ECF No. 45 ("Pl.'s OAQ Resp.").

see also Truck and Bus Tires from Thailand: Antidumping Duty Order, 89 Fed. Reg. 102111 (Dep't Com. Dec. 17, 2024). Commerce subjected Bridgestone's imports of truck and bus tires from Thailand to a duty rate of 48.39 percent ad valorem on the basis of the following determination:

> Because Bridgestone's submitted data could not be verified, we are unable to use its data to calculate an accurate dumping margin for the company. Therefore, for this final determination we find it appropriate to rely on facts available with an adverse inference (AFA) to assign Bridgestone an estimated weighted-average dumping margin, in accordance with sections 776(a) and (b) of the Act, and 19 [C.F.R.] [§] 351.308, because Bridgestone failed to cooperate by not acting to the best of its ability to comply with our requests for information.

Final Determination, 89 Fed. Reg. at 83637. Commerce "identified widespread inaccuracies in the reported data at verification," Mem. from K. Marksberry to S. Fullerton, re: Issues and Decision Memorandum for Final Determination at 7 (Oct. 9, 2024), Case No. A-549-848, Bar Code: 4646390-02 ("IDM"), referring to the "verification" process by which Commerce "verif[ies] all information relied upon in making . . . a final determination" in an antidumping investigation, 19 U.S.C. § 1677(i). Commerce "found numerous discrepancies, including significant, unresolved errors with respect to Bridgestone's reporting of U.S. market rebate expenses, U.S. market destination, and certain missing or unverifiable sales expenses." IDM at 7–8 (footnote omitted). Commerce "further found a number of issues with the reporting of other sales expenses, which called into question the overall accuracy and appropriateness of Bridgestone's application of the selling expense values found in its trial balances to its [Home Market] and U.S. sales," id. at 8 (footnote omitted), and "assign[ed] a final dumping margin based on total AFA for Bridgestone," id. at 3.[2]

---

[2] "The phrase 'total adverse facts available' or 'total AFA' encompasses a series of steps that Commerce takes to reach the conclusion that all of a party's reported information is unreliable or

Court No. 24-00263                                                                                           Page 4

Among the findings that informed this determination of a failure to cooperate, three are relevant to Bridgestone's Motion to Complete. All three pertain to Commerce's non-acceptance of documents (collectively, the "Rejected Documents") that Bridgestone submitted at a verification proceeding that took place in Nashville, Tennessee between June 26 and 28, 2024. See id. at 16. Although the Rejected Documents are designated as business proprietary information, only certain outward characteristics of them—which are public—are relevant to the Motion to Complete. The court summarizes those characteristics below.

### A.    *The Accounts Receivable Report*

The Accounts Receivable Report is a list of account balances that Bridgestone reported it maintained with certain locations of GCR, an affiliated tire reseller, during the Period of Investigation. See Mot. to Complete at Ex. 2, Attach. 1; Mem. from F. Montgomery to the File, re: Verification of the Sales Response of Bridgestone at 17 (Aug. 22, 2024), Case No. A-549-848, Bar Code: 4619981-01 ("Verification Report"). Commerce declined to accept the Report at verification and offered the following reasons for that decision:

> Upon receipt of this reconciliation, we noted that the reconciliation did not include sales to all of the . . . requested affiliated GCR customers. Company officials were unable to contact the personnel that had created the report for Commerce and, due to the short amount of time remaining for Commerce to verify any updated information and the incompleteness of the reconciliation, we declined to accept the

---

unusable . . . as a result of a party's failure to cooperate to the best of its ability." Novolipetsk Steel Pub. Joint Stock Co. v. United States, 44 CIT __, __ n.4, 456 F. Supp. 3d 1300, 1303 n.4 (2020). The practice "encompasses a two-part inquiry pursuant to which Commerce must first identify why it needs to rely on facts otherwise available, and second, explain how a party failed to cooperate to the best of its ability as to warrant the use of an adverse inference." Id. (citing 19 U.S.C. § 1677e(a)–(b)); see also AG der Dillinger Hüttenwerke v. United States, No. 24-1219, 2025 WL 1689712, at *4 (Fed. Cir. June 17, 2025) ("Commerce may apply adverse facts available to fill in an information gap if it concludes that a respondent has 'failed to cooperate by not acting to the best of its ability to comply with a request for information.'" (quoting 19 U.S.C. § 1677e(b)(1))).

Court No. 24-00263 Page 5

> reconciliation as a completeness test for the record. We were consequently unable to identify the [Constructed Export Price] sales in Bridgestone's U.S. sales database that were made to its affiliate GCR locations, or reconcile these sales to [Bridgestone]'s accounting system during the verification.

Id. Bridgestone challenges the accuracy of this account, its underlying reasoning, and its sufficiency as a basis for Commerce's application of total AFA. See Compl. ¶¶ 26–59.

### B. The Rebate Report

The Rebate Report contains information related to rebates that Bridgestone gave to customers in the U.S. market during the Period of Investigation. See Mot. to Complete at Ex. 2, Attach. 2. Commerce stated that it "requested certain documentation from Bridgestone that [Bridgestone] failed to provide prior to the end of the verification, including a breakdown of the smallest and largest values received by [Bridgestone]'s customers for each type of rebate." IDM at 21. The Rebate Report that Bridgestone provided, by Commerce's description, was a "list of total rebates by month and customer of the [Period of Investigation]" that "is a report generated from [Bridgestone]'s rebate tracking system that contains a list of rebate agreements, and the settled amount for each month of the [Period of Investigation]." Id. Commerce explained that this submission was unacceptable because it "required organization and sorting by customer and rebate type to provide the information requested, collating the values using other data such as Bridgestone's customer codes and classification of rebates." Id. As a result, the record that Commerce compiled "only contains a sample selection of the report from the rebate tracking system." Id. Bridgestone now attempts to complete the record for review with the full Rebate Report, arguing that it is "a document that was presented to Commerce in its entirety" that "fits squarely within the statutory definition of the administrative record." Mot. to Complete at 6–7.

### C.     The Rebate Pivot Table

The Rebate Pivot Table is a "pivot table"[3] summary that assertedly sorts the information in the complete Rebate Report by customer and rebate type.  See id. at 7–8 & Ex. 2, Attach. 3.  Bridgestone argues that it is the "[m]issing [l]ink in the [r]ecord" because it cuts against Commerce's finding "that Bridgestone withheld the information necessary to identify the smallest and largest rebate customers."  Pl.'s Post-Arg. Br. at 8, Apr. 21, 2025, ECF No. 52.  Although the Government argues that "Commerce verifiers did not view the same pivot table Bridgestone now attempts to add to the record," a Commerce verifier has since declared that he was "presented with a pivot table indicating the total of each type of rebate received by each customer during the [Period of Investigation], such as the documents in Attachment 3."  Aff. of J. Schueler ¶ 8, May 9, 2025, ECF No. 53-2.

### II.    *Procedural History*

Bridgestone initiated this action on December 23, 2024.  See Compl.  After United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC ("United Steel Workers") was joined as a Defendant-Intervenor, see Order, Jan. 14, ECF No. 18, Commerce timely filed an index to the Administrative Record, see Admin. R. Index, Feb. 3, 2025, ECF No. 25.

### A.     *Motion to Complete*

Bridgestone then filed the instant Motion to Complete.  This filing included a pair of affidavits by Bridgestone's counsel that describe the Documents' presentation to Commerce at

---

[3] "A pivot table is a type of data-summarization table that a user can . . . generate, based on a preexisting table of raw data."  Enfish, LLC v. Microsoft Corp., 822 F.3d 1327, 1340 (Fed. Cir. 2016).

verification, see Mot. to Complete at Ex. 1, Affs. of P. Lee & D. Cannistra, ECF No. 33-1, and the three Rejected Documents, id. at Ex. 2, Attachs. 1–3, ECF No. 33-2.  Both the Government and United Steel Workers filed responses in opposition to Bridgestone's Motion to Complete.  See Def.'s Resp. in Opp'n to Mot. to Complete, Mar. 18, 2025, ECF No. 36 ("Gov't Br."); Def.-Inter.'s Resp. in Opp'n to Mot. to Complete, Mar. 18, 2025, ECF No. 37 ("Def.-Inter.'s Br.").

After issuing written questions to the parties, see Letter from the Ct., Mar. 28, 2025, ECF No. 43, and receiving timely written responses, see Def.'s Resp. to Ct.'s Qs., Apr. 7, 2025, ECF No. 44 ("Gov't OAQ Resp."); Pl.'s OAQ Resp.; Def.-Inter.'s Resp. to Ct.'s Qs., Apr. 7, 2025, ECF No. 46 ("Def.-Inter.'s OAQ Resp."), the court held oral argument on the Motion to Complete on April 9, 2025.  See Oral Arg. Tr., Apr. 18, 2025, ECF No. 49.  The parties then filed post-argument submissions at the court's behest.  See Def.-Inter.'s Post-Arg. Br., Apr. 21, 2025, ECF No. 50; Def.'s Post-Arg. Br., Apr. 21, 2025, ECF No. 51 ("Gov't Post-Arg. Br."); Pl.'s Post-Arg. Br.

The day after oral argument, the court issued an order that afforded the Government "an opportunity to file a responsive declaration or affidavit of its own, including, if appropriate, rebuttal or agreement" with the affidavits that Bridgestone appended to its Motion to Complete.  See Order at 2, Apr. 10, 2025, ECF No. 48.  The order further specified that "[a]ny modifications with respect to the Government's prior representations to the court, either in written submissions or at oral argument, should be so noted."  Id.  The Government filed two affidavits of Commerce verifiers who took part in the verification of Bridgestone's submissions in Nashville.  See Aff. of F. Montgomery, May 9, 2025, ECF No. 53-1; Schueler Aff.  This filing did not note any departures from the Government's prior representations.

Bridgestone then moved for leave to file a reply in further support of the Motion to

Complete.  See Mot. for Leave to File a Reply, June 9, 2025, ECF No. 54.  The court now grants that motion, and Bridgestone's Reply is deemed filed.  See id. at Attach. 1 ("Pl.'s Reply").[4]  Although the court does not rely on any of the arguments raised in Bridgestone's Reply in granting Bridgestone's underlying Motion to Complete the Record, the Reply nevertheless "aids the court's understanding of the disagreement between the [p]arties with respect to the circumstances surrounding the presentation of . . . documents at verification."  Hyundai Elec. & Energy Sys. Co. v. United States, 44 CIT __, __, 477 F. Supp. 3d 1324, 1328 (2020).

### B.    *Motion to Consolidate*

United Steel Workers has separately challenged the Final Determination as it pertains to Prinx Chengshan Tire (Thailand) Co. Ltd. ("Prinx"), another respondent in Commerce's antidumping investigation into imports of truck and bus tires from Thailand.  See Compl., United Steel Workers v. United States, Ct. No. 25-0004 (USCIT filed Feb. 7, 2025) (ECF No. 10).  The Government, with the consent of United Steel Workers, seeks to consolidate that action with this one.  See Mot. to Consolidate, Mar. 4, 2025, ECF No. 35.  Bridgestone opposes consolidation.  See Pl.'s Resp. in Opp'n to Mot. to Consolidate, Mar. 25, 2025, ECF No. 38.  The court held the Motion to Consolidate in abeyance pending a disposition on the Motion to Complete.  See Order, Mar. 27, 2025, ECF No. 41.

## JURISDICTION AND SCOPE OF REVIEW

The court has jurisdiction to hear this challenge to a final antidumping determination by Commerce under 28 U.S.C. § 1581(c).

---

[4] Both the Government and United Steel Workers oppose Bridgestone's Motion for Leave to File a Reply.  See Def.-Inter.'s Resp. to Mot. for Leave to File a Reply, June 12, 2025, ECF No. 55; Def.'s Resp. to Mot. for Leave to File a Reply, June 25, 2025, ECF No. 56.

When the court reviews such a determination, the "[r]ecord for review" is defined by statute as "a copy of all information presented to or obtained by the Secretary, the administering authority, or the Commission during the course of the administrative proceeding . . . ." 19 U.S.C. § 1516a(b)(2)(A)(i); see also 28 U.S.C. § 2635(b)(1)(A) (same); USCIT R. 73.2(a)(1) (requiring the filing of the same information with the Clerk of Court). "Judicial review of antidumping duty administrative proceedings is normally limited to the record before the agency in the particular review proceeding at issue . . . ." QVD Food Co. v. United States, 658 F.3d 1318, 1324 (Fed. Cir. 2011). The court will grant a motion to complete the record for review if the movant "demonstrate[s] that there is a reasonable basis to believe the administrative record is incomplete." Saha Thai Steel Pipe Co. v. United States, 11 CIT 257, 261, 661 F. Supp. 1198, 1202 (1987) (emphasis in original).

## DISCUSSION

### I. *Motion to Complete the Record*

Through its briefing and affidavits, Bridgestone has established that it presented each of Rejected Documents for Commerce's review at the June 2024 verification in Nashville. See Cannistra Aff. ¶ 5; Lee Aff. ¶¶ 5–6. The Government does not rebut the fact of these presentations in its own briefing and affidavits. Because the Rejected Documents thus meet the statutory definition of "information presented to or obtained by the Secretary, the administering authority, or the Commission during the course of the administrative proceeding," 19 U.S.C. § 1516a(b)(2)(A)(i), they belong in the administrative record that the court will review on a future motion for judgment on the agency record. See USCIT R. 56.2. And because the Rejected Documents do not appear in the administrative record that the Government filed with the court, the court identifies "a reasonable basis to believe the administrative record is incomplete." Saha

Court No. 24-00263                                                                                                    Page 10

Thai, 11 CIT at 261, 661 F. Supp. at 1202 (emphasis in original).  The court accordingly grants Bridgestone's Motion to Complete.

### A. Commerce Was Presented with the Rejected Documents at Verification

Although the Government argues that Commerce properly rejected the Rejected Documents, it does not meaningfully dispute that Bridgestone presented them during the verification proceeding.

As to the Accounts Receivable Report, the Government does not contest Bridgestone counsel's statement that "[t]he documents included in Attachment 1 of the proposed Order are the documents obtained and reviewed by Commerce and discussed in bullet 2 of the Verification Report at pages 2–3, in completeness test 12 of the Verification Report at pages 17–18 and in the Decision Memorandum at pages 17 through 21." Cannistra Aff. ¶ 5.  The Government has waived any contention to the contrary.  The Government explains that its position that "Bridgestone cannot demonstrate that it even provided that same information for the verifiers to review" is one that "applies to the second and third document categories."  Gov't OAQ Resp. at 3.  These latter categories do not include the Accounts Receivable Report.

As to the Rebate Report, one of the Commerce verifiers avers that "[t]he verifiers reviewed Bridgestone's reported U.S. rebates," and provides reasons why Commerce, having received the Report itself, did not accept it.  Schueler Aff. ¶ 6.  The Government further argues that "[w]ith respect to the second category of documents—the rebate report—it is undisputed that Commerce accepted certain pages for the record to illustrate the type of information Bridgestone proffered at verification—an action commonly taken by Commerce at verification." Gov't Post-Arg. Br. at 6. In defending Commerce's decision not to accept the entire Rebate Report, the Government recognizes that Bridgestone at least "proffered" it at verification.  Id.

The Government also does not meaningfully dispute Bridgestone's contention that "[t]he document included in Attachment 3 of the proposed Order is a pivot table summary requested by and provided to the Commerce Officials at verification . . . ." Lee Aff. ¶ 6.  The Government states in its response brief that "there are discrepancies between the documents proffered now and those actually offered at verification that should bar their inclusion in the administrative record," and that "Commerce cannot reasonably ensure that the documents Bridgestone attempts to supplement the record with are the exact documents presented at verification, in the same exact form and manner previously provided."  Gov't Br. at 2, 11.  The Government sharpens this position in its post-argument submission, stating that its affidavits "will, among other things, supplement the statement in our opposition that Commerce verifiers did not view the same pivot table Bridgestone now attempts to add to the record," and that "[b]ecause Commerce did not view this exact document, it could not have considered its substance when making its AFA determination."  Gov't Post-Arg. Br. at 7.

The Government's later-filed affidavits, however, do not meet this description.  They do not address whether Commerce verifiers viewed the same document that Bridgestone presented as Attachment 3 to its Motion to Complete the Record.  Indeed, the relevant Commerce verifier indicated his receipt of the Rebate Pivot Table as it appears as an attachment to the Motion to Complete:

> Accordingly, <u>prior to being presented with a pivot table indicating the total of each type of rebate received by each customer during the [Period of Investigation], such as the documents in Attachment 3 to the motion to supplement the record</u>, I informed [Bridgestone's counsel] that we would be unable to accept the new factual information for inclusion as a verification exhibit.

Schueler Aff. ¶ 8 (emphasis added).  This affidavit closes off any argument by the Government that the Rebate Pivot Table differs from the document that Bridgestone "presented" to Commerce

at verification. In its order of April 10, the court specifically quoted the sworn statement of Bridgestone's counsel that the Rebate Pivot Table was "requested by and provided to the Commerce Officials at verification," and afforded the Government "an opportunity to file a responsive declaration or affidavit of its own, including, if appropriate, rebuttal or agreement with the . . . affidavits presented by Plaintiff." Apr. 10 Order at 2 (quoting Lee Aff. ¶ 6).

Thus, rather than "simply accept Bridgestone's claim" that the Rebate Pivot Table accurately reflects Bridgestone's verification submission, Gov't Br. at 11, the court gave the Government an opportunity to rebut that claim in a responsive affidavit. But the Government did not offer a rebuttal on the discrepancy issue for the Rebate Pivot Table or any of the other Rejected Documents. See generally Montgomery Aff.; Schueler Aff. Instead, the Government's responsive affidavit essentially agrees with Bridgestone on the question of whether Bridgestone presented Commerce with the Rebate Pivot Table as it appears in Attachment 3. See Schueler Aff. ¶ 8. In the absence of a specific objection by the Government, the court infers that the Rebate Pivot Table is a faithful representation of the pivot table summary that Bridgestone presented to Commerce at verification.

### B. *The Rejected Documents Belong in the Record for Review*

Commerce's receipt of the Rejected Documents at verification warrants the Documents' inclusion in the "record for review" as defined by 19 U.S.C. § 1516a(b)(2)(A)(i). The Government argues that Commerce has wide discretion to accept or reject documents at verification, and that Commerce's rejection of the Rejected Documents means that they ought not to be subjected to judicial review. But 19 U.S.C. § 1516a(b)(2)(A)(i) does not distinguish between accepted and rejected material. It instead refers broadly to "information presented to or obtained by the Secretary . . . during the course of the administrative proceeding." Id.; see CSC Sugar LLC v.

Court No. 24-00263 Page 13

United States, 42 CIT __, __, 317 F. Supp. 3d 1334, 1340 (2018) ("The language of this section is clear and unambiguous.").[5] If a party presents material that Commerce rejects, the material does not lose its "presented" status by dint of the rejection.

The Government points out that Commerce's regulations provide that "the Secretary will not consider or retain in the official record of the proceeding . . . [u]ntimely filed factual information, written argument, or other material that the Secretary rejects . . . ." 19 C.F.R. § 351.302(d)(1); see Gov't Br. at 4–5. Commerce, however, lacks the power to narrow the statutory scope of judicial review by regulation. It is true that Commerce must compile the record that forms the basis for its own determinations, see 19 U.S.C. § 1677f; 28 U.S.C. § 2635(b)(1), and that it has promulgated rules to that end, see generally 19 C.F.R. pt. 351(C). But to the extent these rules leave a gap between the record that Commerce compiles and the record that Congress compels the court to review, it is the Congressional mandate that controls the scope of review. As the court has explained, "[t]he administrative record is not necessarily those documents that the

---

[5] This case thus differs from Southern Cross Seafoods, LLC v. United States, where the court observed that "[w]here an agency presents a certified copy of the complete administrative record, as was done in this case, the court assumes the agency properly designated the Administrative Record absent clear evidence to the contrary." 47 CIT __, __, 658 F. Supp. 3d 1336, 1340–41 (2023) (quoting Defs. of Wildlife v. Dalton, 24 CIT 1116, 1119 (2000)). The actions in both Southern Cross and Dalton invoked the court's residual jurisdiction under 28 U.S.C. 1581(i). But 19 U.S.C. § 1516a(b)(2)(A)(i) does not apply to such cases; instead, the Administrative Procedure Act ("APA") provides the relevant scope of review. See 28 U.S.C. § 2640(e). And the APA, unlike 19 U.S.C. § 1516a(b)(2)(A)(i), does not by its terms compel review of "all information presented to or obtained" by an agency. See 5 U.S.C. § 706 (mandating review of "the whole record" without further specification); see also Ammex, Inc. v. United States, 23 CIT 549, 554–55, 62 F. Supp. 2d 1148, 1155–56 (1999) (noting that "a substantial body of case law has helped to develop standards for what constitutes the 'whole record'"). Even under the less explicitly inclusive APA standard, it is conceivable that Commerce's reliance on the Rejected Documents' contents as a basis for rejecting them would nevertheless be "clear evidence" that the record that Commerce filed is incomplete. Southern Cross, 47 CIT at __, 658 F. Supp. 3d at 1341.

Court No. 24-00263 Page 14

agency has compiled and submitted as 'the' administrative record; rather the administrative record consists of all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position." Hyundai, 44 CIT at __, 477 F. Supp. 3d at 1329 (internal quotation marks and citation omitted).

It is not a problem that the administrative record that Commerce puts together may sometimes differ from the "record for review" that the court is required by statute to examine. These two collections of information may overlap, but they have essentially different uses. Commerce compiles an administrative record to close the universe of information on which it bases its determinations. See Böwe-Passat v. United States, 17 CIT 335, 339 (1993) ("The Commerce Department clearly cannot complete its work unless it is able at some point to 'freeze' the record and make calculations and findings based on that fixed and certain body of information."). The court's task, by contrast, is to "hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1). The "determination[s]" subject to review under this provision include Commerce's rejections of submitted material. See Stupp Corp. v. United States, 5 F.4th 1341, 1350–51 (Fed. Cir. 2021).

As it performs this function, the court must sometimes review administratively excluded material to determine the lawfulness of its exclusion. This necessarily entails a limited departure from Commerce's own definition of the "administrative record." If Commerce could fix the scope of judicial review through its own decisions about what to include in the record, those decisions themselves would escape review. That would undercut 19 U.S.C. § 1516a(b)(1)'s mandate of broad reviewability.

"[C]ommon sense" confirms the plain-text reading that § 1516a(b)(2)(A)(i) compels the reviewability of all documents, accepted or not, that are "presented" to Commerce during an antidumping investigation. Floral Trade Council of Davis, Cal. v. United States, 13 CIT 242, 243, 709 F. Supp. 229, 230 (1989). When the court delineates the scope of judicial review, it must independently consider "whether the decision can be reviewed properly without certain documents." Id. But if Commerce fails "to provide the court with the basis of its determination, . . . [s]uch a failure, of course, would preclude the court from fulfilling its statutory obligation on review." Beker Indus. Corp. v. United States, 7 CIT 313, 318 (1984).[6]

The challenged "determination" here is Commerce's rejection of the Rejected Documents. See Compl. ¶¶ 26–106. At least part of the "basis" of this determination was the nature of the Rejected Documents themselves. For example, "[t]he verifiers found the information contained in [the Rebate Report]——which reflected all rebates of all types awarded to each U.S. customer during the [Period of Investigation]—to be new factual information that was previously absent from the record." Montgomery Aff. ¶ 8. How is the court to determine whether the Rebate Report contained new factual information[7] without looking at the contents of the Report itself? How can

---

[6] The Federal Circuit's observation in Micron Tech., Inc. v. United States that "Commerce is not required to make all of [a] respondent's financial documents part of the record," 117 F.3d 1386, 1397 n.16 (Fed. Cir. 1997), is not to the contrary. That Commerce is not required to add "all" documents to the administrative record is hardly a rule of decision that the court may not review any documents that Commerce chose not to accept.

[7] Bridgestone argues that the "new factual information" rationale advanced in this affidavit has no basis in any prior representation by Commerce or the Government. See Pl.'s Reply at 1–2. The court has no occasion to reach this argument, or any of the others that Bridgestone raises in its Reply, as it decides the two motions before the court. For now it suffices to note that "[a]n agency must defend its actions based on the reasons it gave when it acted." DHS v. Regents of the Univ. of Cal., 591 U.S. 1, 24 (2020).

the court adjudicate the separate claim that "Commerce's finding that the [Accounts Receivable] reports were incomplete is unsupported by substantial evidence," Compl. ¶ 46, without reference to the full document whose completeness is in question? Even if Commerce's development of the record is entitled to some deference, see Stupp, 5 F.4th at 1350, the court needs to know what the Government is asking it to defer to. "The court cannot review what it cannot see." Prime Time Commerce LLC v. United States, 43 CIT __, __, 396 F. Supp. 3d 1319, 1329 (2019).

The Government assumes that the court's completion of the record for review is tantamount to a legal conclusion that Commerce erred in rejecting the Rejected Documents. See Gov't Br. at 10 ("The Court should not allow Bridgestone to circumvent Commerce's verification procedures by allowing parties to belatedly cure defects in their verification documents."). This assumption conflates the availability of review with the outcome of review. The narrow issue before the court is whether the record submitted by Commerce allows the court to determine whether Commerce properly rejected the Rejected Documents. In finding that the documents Commerce filed with the court do not allow for such a determination, the court does not pass on the ultimate issue of whether Commerce's underlying rejections were lawful. See Compl. ¶¶ 26–106. The court will reach that issue if a party raises it on a motion for judgment on the agency record under USCIT Rule 56.2. No such motion is yet before the court.

## II. *Motion to Consolidate*

There is less to say about the Government's motion to consolidate this case with United Steel Workers. By rule, "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." USCIT R. 42. And "[w]here consolidation would not further the interests of judicial economy or where dissimilar

issues outweigh the common issues, consolidation is inappropriate." Deer Park Glycine, LLC v. United States, 48 CIT __, __, 693 F. Supp. 3d 1361, 1363 (2024) (citing Zenith Elecs. Corp. v. United States, 15 CIT 539, 540 (1991)).

Although this case and United Steel Workers involve challenges to the same Final Determination, they do not appear to involve specific common questions of law or fact. As the Government recognizes, the claims in the two cases "address[] separate issues." Mot. to Consolidate at 3. This statement is correct. In United Steel Workers, the plaintiff's claims pertain to Commerce's calculation of Prinx's financial expense ratio and warranty expenses. See United Steel Workers Compl. ¶¶ 12–28. In this case, meanwhile, Bridgestone's claims pertain to Commerce's determination that Bridgestone failed to properly report an entirely distinct set of expenses. See Compl. ¶¶ 26–106. These claims invite independent analyses; as things now stand, at least, the court does not see how resolving a factual or legal issue in this case would influence the resolution of a corresponding issue in United Steel Workers. While it is true that both sets of claims involve Commerce's application of an adverse inference, and that the "all-others rate" that applies to certain other respondents is a function of both Bridgestone's and Prinx's final dumping margins, neither of these similarities is a "common question of law or fact" on which USCIT Rule 42 conditions consolidation.

The court recognizes that separate challenges to a single determination can sometimes warrant consolidation on the basis of their common administrative origin. See Brother Indus., Ltd. v. United States, 1 CIT 102, 104 (1980) (weighing, among other considerations, the fact that "consolidation will permit the court to resolve all issues relating to the contested administrative determination in a single legal proceeding"). The court will accordingly monitor this case as it

develops alongside United Steel Workers. It may become clear over time that judicial economy will suffer if the two cases proceed along separate tracks. For example, the court will hesitate to order staggered remands of the same Final Determination in a hypothetical scenario where both challenges to the Final Determination are successful. For now, however, the two actions will remain separate.

## CONCLUSION

Because Bridgestone has established that the Rejected Documents warrant inclusion in the record for review as defined by § 1516a(b)(2)(A)(i), which in turn creates "a reasonable basis to believe the administrative record is incomplete," Saha Thai, 11 CIT at 261, 661 F. Supp. at 1202 (emphasis omitted), the court grants Bridgestone's Motion to Complete. And because this case and United Steel Workers do not involve any presently identifiable common questions of law or fact, and because it does not appear at this time that consolidation would serve judicial economy, the court denies the Government's Motion to Consolidate. See USCIT R. 42. It is accordingly

**ORDERED** that Bridgestone's Motion to Complete the Record, Feb. 25, 2025, ECF No. 33, is **GRANTED**; it is further

**ORDERED** that within 14 days of this order, the U.S. Department of Commerce shall effect the inclusion in the record of Attachments 1, 2, and 3 to Bridgestone's Motion to Complete the Record, in accordance with the "Alternative Procedure" set forth in USCIT Rule 73.2(b); it is further

**ORDERED** that the words "Rejected and Retained Document" shall be superimposed on each page in the record for review to which that description applies; it is further

Court No. 24-00263 Page 19

**ORDERED** that the Government's Motion to Consolidate, Mar. 4, 2025, ECF No. 35, is **DENIED** without prejudice to renewal upon a showing that satisfies the conditions set forth in USCIT Rule 42; it is further

**ORDERED** that Bridgestone's Motion for Leave to File a Reply, June 9, 2025, ECF No. 54, is **GRANTED**; it is further

**ORDERED** that Bridgestone's proposed Reply is deemed filed; and it is further

**ORDERED** that the parties shall file a joint status report and proposed briefing schedule within 30 days of this order. If the parties cannot agree on a single report and proposal, the court will consider separate filings.

**SO ORDERED.**

/s/     *Gary S. Katzmann*
Gary S. Katzmann, Judge

Dated: July 3, 2025
       New York, New York