**UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE**

| | | |
|---|---|---|
| BRIDGESTONE AMERICAS TIRE OPERATIONS, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Court No. 24-00263 |
| | ) | |
| UNITED STATES, | ) | PUBLIC DOCUMENT |
| | ) | |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| United Steel, Paper and Forestry, Rubber, Manufacturing, | ) | |
| Energy, Allied Industrial and Service Workers | ) | |
| International Union, AFL-CIO, CLC | ) | |
| | ) | |
| Defendant-Intervenors. | ) | |

**PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S
MOTION FOR JUDGMENT ON THE AGENCY RECORD**

Daniel J. Cannistra
Pierce Lee
Valerie Ellis
CROWELL & MORING LLP
1001 Pennsylvania Ave, NW
Washington, D.C. 20004
Tel: (202) 624-2500
Email: dcannistra@crowell.com

*Counsel for Plaintiff*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

ARGUMENT ...................................................................................................... 2

I.    The Responses Confirm the Absence of Any Statutory Predicate for Total AFA ................. 2

    1.    A finding that necessary information is missing from the record under 19 U.S.C. § 1677e(a); ........................................................................................... 2

    2.    Compliance with the notice-and-opportunity-to-remedy requirement of § 1677m(d); .. 2

    3.    A supported finding that the respondent failed to cooperate to the best of its ability under § 1677e(b); and ............................................................................... 2

    4.    A determination that any deficiencies are so pervasive that the reported dataset is unusable in its entirety. .............................................................................. 2

  B.    No Necessary Information Was Missing From the Record ...................................... 3

  C.    Commerce Did Not Establish a Failure to Cooperate Under § 1677e(b) ...................... 4

  D.    Commerce Did Not Demonstrate Pervasive Deficiencies Rendering the Data Unusable .. 5

II.   Neither the Government nor Intervenor Addresses the Central Defect in Commerce's GCR A/R Rationale ............................................................................................... 6

  A.    The Record Shows Bridgestone Provided the A/R Reports Requested at Verification ...... 6

  B.    The Absence of Receivables does not Establish Missing Sales ................................ 7

  C.    Commerce's "Reconciliation" Framing Is Post Hoc and Unsupported by the Record ....... 7

  D.    The Alleged A/R "Deficiency" Has No Logical Connection to CEP Sales Reporting ....... 8

  E.    Once the A/R Issue Falls, Commerce's Principal Justification for Total AFA Collapses ... 9

III.  The Intervenor's "Reconciliation" Argument Repackages Methodological Limitations as Non-Cooperation ........................................................................................... 10

  A.    The Verification Record Does Not Reflect a Broader Reconciliation Request ............... 10

  B.    Commerce Did Not Comply With § 1677m(d) ................................................. 10

  C.    Dissatisfaction With Format Does Not Constitute Missing Information ....................... 11

  D.    The Record Does Not Support a Finding of Non-Cooperation Under Nippon Steel ........ 11

  E.    Viewed as a Whole, the Record Does Not Support Total AFA ................................. 12

IV.   The Rebate Record Does Not Support Total AFA ............................................... 12

  A.    The Record Confirms That Commerce Verified Rebate Totals ................................. 13

  B.    The Allocation Adjustment Did Not Introduce New Information ............................... 13

  C.    Commerce's Preliminary Analysis Undermines the Claimed Materiality ...................... 14

  D.    The General Ledger Account Issue Does Not Establish a Statutory Gap ...................... 15

E.    E. The Record Does Not Support a Finding of Non-Cooperation ................................... 15

V.    The OTHDISU Finding Does Not Establish Missing Information ................................... 16

VI.    The Additional Verification Issues Do Not Render the Database Unusable ...................... 17

    A.    Freight and Warehousing ................................................................................ 17

    B.    Indirect Selling Expenses ................................................................................ 17

    C.    Packing Costs ................................................................................................. 18

    D.    DWAREHU ..................................................................................................... 18

    E.    Aggregation Does Not Establish Pervasiveness ................................................. 19

VII.    Pervasiveness Is Not Supported by Substantial Evidence ............................................ 19

VIII.   Intervenor's Exhaustion Arguments Do Not Preclude Review ..................................... 21

    A.    The Core Statutory Issue Was Not Waived ....................................................... 21

    B.    The Cohen's d Challenge Is Not Barred ........................................................... 21

    C.    The Record Demonstrates the Dispositive Role of Cohen's d .............................. 22

    D.    Total AFA Requires Its Own Statutory Basis .................................................... 22

IX.    Commerce's Corroboration Analysis Is Legally Deficient .......................................... 23

CONCLUSION ........................................................................................................ 23

EXHIBIT I .....................................................................................................Ex-1

# TABLE OF AUTHORITIES

**Cases**

*Alloy Piping Prods., Inc. v. United States*, Slip Op. 10-15 (Ct. Int'l Trade Feb. 8, 2010). ............. 9

*Bridgestone Americas Tire Operations, LLC, v. United State*s, Slip Op. 25-82 (Court of Int'l Trade July 3, 2025) .................................................................................................. 1, 4, 8, 9

*Çelik Halat Ve Tel Sanayi A.Ş. v. United States*, 557 F. Supp. 3d 1363, 1375–76 (Ct. Int'l Trade 2022) .................................................................................................... 2, 5, 13, 16

*Foshan Shunde Yongjian Housewares & Hardware Co. v. United States*, 35 C.I.T. 1398, 1416 (2011) ............................................................................................................ 6, 21, 23

*Goodluck India Ltd. v. United States*, 393 F. Supp. 3d 1352, 1366 (Ct. Int'l Trade 2019)........... 16

*Hitachi Energy USA Inc. v. United States,* 34 F.4th 1375, 1386 (Fed. Cir. 2022). ................... 5, 14

*Husteel Co. v. United States*, 98 F. Supp. 3d 1315, 1356 (Ct. Int'l Trade 2015) ......................... 17

*Nat'l Nail Corp. v. United States*, 390 F. Supp. 3d 1356, 1381 (Ct. Int'l Trade 2019).......... passim

*Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382–83 (Fed. Cir. 2003) ............... 5, 14, 18

*Tatung Co. v. United States*, 18 C.I.T. 1137, 1141 (1994) ........................................................... 20

*Toyo Kohan Co., Ltd. v. United States*, Slip Op. 25-141 (Ct. Int'l Trade Oct. 23, 2025) ............ 24

*. F.Lii de Cecco di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000). .................................................................................................................. 26

*Zhejiang Dunan Hetian Metal Co. v. United States*, 652 F.3d 1333, 1348 (Fed. Cir. 2011) . passim

**Statutes**

19 U.S.C. § 1516a(b)(2)(A)(i) .................................................................................................... 1

19 U.S.C. § 1677a(b) ................................................................................................................. 8

19 U.S.C. § 1677e(a) .......................................................................................................... passim

19 U.S.C. § 1677e(a)(1)....................................................................................................... 11, 13

19 U.S.C. § 1677e(a)–(b)..................................................................................................... 18, 22

19 U.S.C. § 1677e(b) ......................................................................................................... passim

19 U.S.C. § 1677e(c)(1)..................................................................................................... 23

19 U.S.C. § 1677m(d)........................................................................................ 2, 8, 10, 19

28 U.S.C. § 2637(d)..................................................................................................... 21, 22

# INTRODUCTION

The Government's response confirms that Commerce's application of total adverse facts available ("AFA") does not rest on missing necessary information within the meaning of 19 U.S.C. § 1677e(a), but on Commerce's dissatisfaction with the format and presentation of information it requested and examined at verification. Rather than identify specific information that was unavailable or unverifiable, Defendant repeatedly characterizes Bridgestone's data as incomplete or deficient without demonstrating an actual statutory gap.

That framing cannot be reconciled with the record now before the Court. In *Bridgestone Americas Tire Operations, LLC, v. United State*s, Slip Op. 25-82 (Court of Int'l Trade July 3, 2025), ECF No. 57, the Court granted Bridgestone's motion to complete the record and held that the Accounts Receivable Report, Rebate Report, and Rebate Pivot Table were presented at verification and fall within the statutory definition of the record for review under 19 U.S.C. § 1516a(b)(2)(A)(i). See Slip Op. 25-82 at 9–15-; see also ECF No. 60 and record citations therein. The Court further observed that the Government did not meaningfully dispute that these materials were presented. Id. at 9–12. The question now is not whether those documents existed or were provided, but whether Commerce lawfully concluded that they rendered Bridgestone's reported data unusable for purposes of total AFA.

Neither Defendant nor Defendant-Intervenor identifies a single unreported sale, fabricated expense, or calculation Commerce was unable to perform. The Verification Report reflects numerous completed tests, including findings of no discrepancies, and Commerce calculated a preliminary margin using Bridgestone's reported data. See Verification Report at 2, 17–25; Final Decision Memorandum at 29–34. The responses instead rely on generalized

assertions of pervasiveness and references to form and manner without demonstrating that necessary information was unavailable.

Section 1677e permits Commerce to rely on facts available only where necessary information is missing from the record or cannot be verified. It does not authorize total AFA because Commerce preferred a different reconciliation format or declined to accept a summary of information examined at verification. Nor does it permit an adverse inference absent a demonstrated failure to cooperate to the best of a respondent's ability under § 1677e(b) and compliance with the notice and opportunity requirements of § 1677m(d).

Because the statutory predicates for total AFA are not supported by substantial evidence, Commerce's determination cannot be sustained. See *Nat'l Nail Corp. v. United States*, 390 F. Supp. 3d 1356, 1381 (Ct. Int'l Trade 2019); *Çelik Halat Ve Tel Sanayi A.Ş. v. United States*, 557 F. Supp. 3d 1363, 1375–76 (Ct. Int'l Trade 2022). The Court should remand with instructions that Commerce calculate Bridgestone's margin using the verified record data.

## ARGUMENT

### I.    The Responses Confirm the Absence of Any Statutory Predicate for Total AFA

The Government and Defendant-Intervenor invoke the statutory framework governing facts available but do not satisfy its threshold requirements. As Bridgestone explained in its opening brief, total AFA requires at least:

1.    A finding that necessary information is missing from the record under 19 U.S.C. § 1677e(a);

2.    Compliance with the notice-and-opportunity-to-remedy requirement of § 1677m(d);

3.    A supported finding that the respondent failed to cooperate to the best of its ability under § 1677e(b); and

4.    A determination that any deficiencies are so pervasive that the reported dataset is unusable in its entirety.

See *Zhejiang Dunan Hetian Metal Co. v. United States*, 652 F.3d 1333, 1348 (Fed. Cir. 2011). The responses do not establish any of these predicates.

Rather than identify specific information that was unavailable or unverifiable, the Government repeats Commerce's descriptions of certain materials as incomplete or deficient. That framing does not substitute for the statutory requirement that necessary information be missing from the record.

B.    **No Necessary Information Was Missing From the Record**

Section 1677e(a) permits Commerce to rely on facts available only where necessary information is not available on the record or cannot be verified. The Government does not identify such information here.

As this Court has already held, the Accounts Receivable Report, Rebate Report, and Rebate Pivot Table were presented at verification and fall within the statutory definition of the record for review. Slip Op. 25-82 at 9–15. The Court further observed that the Government did not meaningfully dispute that these materials were presented. Id. at 9–12. The premise that these documents were missing from the record is therefore no longer sustainable.

Nor do the responses identify any underlying data that was absent. With respect to GCR accounts receivable, Bridgestone provided the A/R reports requested by the verifiers for the identified stores. See Verification Report at 17–18. With respect to rebates, Commerce examined the rebate report and related summaries to verify total rebate expenses and to select customers for further testing. See Verification Report at 25; Exhibit CEP-VE-10. Commerce possessed the sales database, store-level identifiers, accounting records, and reconciliations necessary to calculate a margin.

The Government does not point to a single unreported sale, missing quantity, omitted expense, or calculation Commerce was unable to perform. Instead, it relies on characterizations

3

of formatting, scope, or presentation. But the statute requires a demonstrated absence of necessary information—not dissatisfaction with how that information was organized. See 19 U.S.C. § 1677e(a); *Nat'l Nail Corp. v. United States*, 390 F. Supp. 3d 1356, 1381 (Ct. Int'l Trade 2019) (rejecting use of facts available where alleged gap did not exist); *Çelik Halat Ve Tel Sanayi A.Ş. v. United States*, 557 F. Supp. 3d 1363, 1375–76 (Ct. Int'l Trade 2022) (Commerce exceeded its authority by disregarding record information).

Because the record contains the information necessary to calculate a margin, Commerce's threshold finding under § 1677e(a) is unsupported by substantial evidence.

C.    **Commerce Did Not Establish a Failure to Cooperate Under § 1677e(b)**

Even assuming arguendo that a statutory gap existed, Commerce was required to demonstrate that Bridgestone failed to cooperate to the best of its ability before applying an adverse inference under 19 U.S.C. § 1677e(b).

The Federal Circuit requires more than identification of an error or deficiency. Commerce must show that a reasonable respondent would have known that the requested information was required and that the respondent failed to put forth its maximum efforts to obtain and provide it. *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382–83 (Fed. Cir. 2003). Commerce must also meaningfully examine the respondent's efforts; where it fails to do so, reliance on an adverse inference is unsupported by substantial evidence. *Hitachi Energy USA Inc. v. United States,* 34 F.4th 1375, 1386 (Fed. Cir. 2022).

The Government's response does not identify record evidence establishing such a failure here. Bridgestone timely responded to Commerce's questionnaires, provided detailed narrative and database submissions, and made accounting personnel available during verification. See Verification Report at 2; SCQR at 30; 2SSBCQR at Ex. 2SB-7. The Verification Report reflects numerous completed tests, including findings of no discrepancies.

Moreover, as the Court has already held, the documents Commerce later characterized as missing were presented at verification. Slip Op. 25-82 at 9–15. An adverse inference cannot be sustained on the basis of dissatisfaction with the format or perceived utility of documents that were requested, examined, and used during verification. The Government does not demonstrate that Bridgestone withheld information, refused to provide requested data, or failed to exert maximum efforts to comply. Without such a showing, § 1677e(b) cannot support total AFA.

D.   **Commerce Did Not Demonstrate Pervasive Deficiencies Rendering the Data Unusable**

Total AFA is appropriate only where deficiencies are so pervasive that they render the reported dataset unusable in its entirety. *Zhejiang Dunan Hetian Metal Co. v. United States*, 652 F.3d 1333, 1348 (Fed. Cir. 2011); see also *Foshan Shunde Yongjian Housewares & Hardware Co. v. United States*, 35 C.I.T. 1398, 1416 (2011) (deficiencies must concern core, not tangential, information).

The Government does not meet that standard. Commerce verified total quantities and values of sales and completed numerous verification procedures without discrepancy. See Verification Report at 2. The issues identified in the Final Decision Memorandum concern allocation methodology, labeling inversions, and formula or clerical matters. See Final Decision Memorandum at 29–34. The Government does not identify a missing data point, an unreported sale, or fabricated information.

Nor does it explain how any identified issue prevented Commerce from calculating a dumping margin. Commerce in fact calculated a preliminary margin using Bridgestone's reported data. The statute does not permit Commerce to aggregate discrete or correctable issues into total AFA absent a supported finding that the core sales database is unusable. 19 U.S.C. § 1677e(a)–(b).

Because the record contains the information necessary to calculate a margin, because Commerce did not establish a failure to cooperate under § 1677e(b), and because the identified issues do not rise to the level of pervasive unreliability required by *Zhejiang Dunan*, Commerce's resort to total AFA lacks a statutory foundation.

## II.    Neither the Government nor Intervenor Addresses the Central Defect in Commerce's GCR A/R Rationale

Commerce's principal justification for discarding Bridgestone's verified U.S. sales database was its conclusion that Bridgestone failed to provide a complete accounts receivable ("A/R") reconciliation for certain affiliated GCR locations. See Final Decision Memorandum at 17–20; Verification Report at 17. The Government's response repeats that characterization but does not identify necessary information that was unavailable within the meaning of 19 U.S.C. § 1677e(a).

The completed judicial record confirms that the A/R reports at issue were presented at verification and are now part of the record for review. See Slip Op. 25-82 at 9–15.  The question therefore is whether Commerce reasonably concluded that those materials revealed a statutory gap. The record does not support that conclusion.

### A.    The Record Shows Bridgestone Provided the A/R Reports Requested at Verification

The Verification Report reflects that Commerce requested A/R documentation for eleven identified GCR store locations. Verification Report at 17–18. The judicial record confirms that Bridgestone provided A/R reports corresponding to the relevant customer codes associated with those locations.  Section A Questionnaire at A-11; Verification Report at 17–18.

Seven of the eleven stores appear in both the U.S. sales database and the A/R reports. See Supp. C QR at Ex. 3SC-1a; Verification Report at 17–18. The remaining four stores do not

6

appear in the A/R report—and do not appear in the U.S. sales database. The record reflects no sales to those locations during the POI, and therefore no receivables as of September 30, 2023.

The Government does not identify any unreported sale to those four stores. Nor does the Verification Report contain such a finding. See Verification Report at 17–18. The absence of receivables for locations with no sales does not establish missing sales data.

B.    **The Absence of Receivables Does Not Establish Missing Sales**

An A/R report reflects unpaid balances owed by customers as of a particular date. It does not function as a comprehensive list of all possible sales locations regardless of activity. Where no sales occurred during the POI, no receivable balance would exist.

The Government does not dispute that no sales were made to the four locations absent from the A/R report. It does not identify any discrepancy in total quantity or total value of U.S. sales. See Verification Report at 2 (verification tests confirming totals); id. at 17–18.

Commerce nevertheless inferred that the absence of receivables for certain locations indicated incomplete sales reporting. That inference is unsupported by record evidence identifying an unreported transaction. Substantial evidence requires a rational connection between the facts found and the conclusions drawn. See *Alloy Piping Prods., Inc. v. United States*, Slip Op. 10-15 (Ct. Int'l Trade Feb. 8, 2010).

The completed record confirms that the A/R reports were requested, provided, and reviewed. See Slip Op. 25-82 at 9–15. There is no statutory gap under § 1677e(a).

C.    **Commerce's "Reconciliation" Framing Is Post Hoc and Unsupported by the Record**

In the Final Decision Memorandum, Commerce described its request as one for a reconciliation. See Final Decision Memorandum at 20. The Verification Report, however, identifies the request as A/R documentation for specified locations. Verification Report at 17–18.

7

The Government does not cite record evidence demonstrating that Commerce requested a broader reconciliation beyond the A/R documentation produced. Nor does the Verification Report reflect that Commerce notified Bridgestone during verification that additional reconciliation was required.

If Commerce believed the submission was deficient, 19 U.S.C. § 1677m(d) required notice and an opportunity to remedy the deficiency before resorting to facts available. The Final Decision Memorandum does not identify such notice with respect to the alleged A/R deficiency. See Final Decision Memorandum at 17–20.

Commerce may not transform a dispute over the scope or format of documentation into a finding of non-cooperation absent the statutory predicates. *See Nippon Steel*, 337 F.3d at 1382–83.

### D.    The Alleged A/R "Deficiency" Has No Logical Connection to CEP Sales Reporting

Commerce further concluded that the asserted A/R issue prevented it from verifying that Bridgestone properly reported U.S. sales to the first unaffiliated customer. See Final Decision Memorandum at 20.

Constructed Export Price ("CEP") sales are defined as sales to the first unaffiliated purchaser in the United States. 19 U.S.C. § 1677a(b). Intercompany transfers to affiliated GCR locations are not included in the dumping margin calculation.

Commerce verified total quantity and total value of U.S. sales and conducted completeness tests without discrepancy. See Verification Report at 2 (Tests 10 and 11). Commerce possessed the sales database, store-level identifiers, and accounting records necessary to determine which locations had sales during the POI. See Supp. C QR at Ex. 3SC-1a; Verification Report at 17–18.

The Government does not explain how the absence of receivables for stores with no sales rendered CEP reporting unverifiable. Disagreement over how Commerce chose to interpret A/R documentation does not convert record information into missing information under § 1677e(a). See *Çelik Halat*, 557 F. Supp. 3d at 1375–76.

E.    **Once the A/R Issue Falls, Commerce's Principal Justification for Total AFA Collapses**

The Final Decision Memorandum repeatedly cites the alleged GCR A/R deficiency as a core basis for concluding that Bridgestone's U.S. sales database was unusable. See Final Decision Memorandum at 17–20.

The completed judicial record confirms that the A/R reports were presented at verification and that the absence of receivables for certain locations corresponds to the absence of sales. See Slip Op. 25-82 at 9–15. The Government does not identify a missing datapoint or unreported sale.

Where the asserted record gap is not supported by substantial evidence, the associated findings of non-cooperation and pervasiveness cannot stand. See *Zhejiang Dunan,* 652 F.3d at 1348; *Nat'l Nail*, 390 F. Supp. 3d at 1381.

The statute does not authorize total AFA based on a disagreement over the evidentiary weight of documentation that was provided and reviewed

### III. The Intervenor's "Reconciliation" Argument Repackages Methodological Limitations as Non-Cooperation

Unable to identify necessary information that was unavailable, Defendant-Intervenor reframes the dispute as a failure to provide a reconciliation. That reframing does not satisfy the statutory requirements for total AFA.

#### A. The Verification Record Does Not Reflect a Broader Reconciliation Request

The Verification Report reflects a request for A/R documentation for eleven specified affiliated locations. Verification Report at 17–18. It does not identify a broader request for a GCR-specific reconciliation tying affiliated location codes to reported CEP sales.

The Government does not cite contemporaneous record evidence demonstrating that Commerce requested an additional reconciliation beyond the A/R documentation produced. Nor does the Verification Report reflect that Commerce informed Bridgestone during verification that a different or expanded submission was required.

In the Final Decision Memorandum, Commerce characterized the submission as incomplete because it did not constitute a complete reconciliation. Final Decision Memorandum at 20. But the Memorandum does not cite record evidence showing that such a reconciliation was requested at verification or that Bridgestone was notified of any deficiency at that time.

An agency may not rely on post-verification characterizations of its requests to establish a statutory gap under § 1677e(a). See *Nat'l Nail Corp. v. United States*, 390 F. Supp. 3d 1356, 1381 (Ct. Int'l Trade 2019).

#### B. Commerce Did Not Comply With § 1677m(d)

Even if Commerce believed the A/R documentation was deficient, § 1677m(d) required Commerce to notify Bridgestone of the perceived deficiency and provide an opportunity to remedy it before resorting to facts available.

The Verification Report does not reflect such notice. See Verification Report at 17–18. The Final Decision Memorandum likewise does not identify written or oral notification pursuant to § 1677m(d). See Final Decision Memorandum at 17–20.

Section 1677e(a) expressly operates subject to § 1677m(d). Commerce may not bypass the notice-and-opportunity requirement and then rely on the alleged deficiency as a basis for total AFA. See 19 U.S.C. § 1677e(a); *Çelik Halat Ve Tel Sanayi A.Ş. v. United States*, 557 F. Supp. 3d 1363, 1381 (Ct. Int'l Trade 2022).

### C.    Dissatisfaction With Format Does Not Constitute Missing Information

The statute authorizes reliance on facts available only where necessary information is not on the record. 19 U.S.C. § 1677e(a)(1). It does not permit Commerce to deem information unavailable because it does not facilitate a preferred analytical approach.

As this Court has already held, the A/R reports were presented at verification and belong in the record for review. Slip Op. 25-82 at 9–15; see also ECF No. 60. Commerce requested A/R documentation, received it, and examined it. The Government does not identify an unreported sale or missing datapoint arising from that documentation.

A dispute regarding how Commerce chose to use—or not use—the A/R reports does not establish the absence of necessary information.

### D.    The Record Does Not Support a Finding of Non-Cooperation Under Nippon Steel

An adverse inference under 19 U.S.C. § 1677e(b) requires a supported finding that the respondent failed to cooperate to the best of its ability. *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382–83 (Fed. Cir. 2003). That standard requires both an objective and subjective showing: that a reasonable respondent would have understood the request and that the respondent failed to exert maximum efforts to comply.

11

The Government does not make that showing. Bridgestone responded to Commerce's questionnaires, provided supporting documentation, and made personnel available at verification. See Verification Report at 2. When Commerce requested A/R documentation for the identified locations, Bridgestone produced the A/R reports corresponding to the relevant customer codes. Verification Report at 17–18.

There is no record evidence that Bridgestone withheld information, refused to provide requested data, or impeded verification. A disagreement over the scope or format of documentation does not establish a failure to cooperate under Nippon Steel. See also *Hitachi Energy USA Inc. v. United States*, 34 F.4th 1375, 1386 (Fed. Cir. 2022).

    E.    **Viewed as a Whole, the Record Does Not Support Total AFA**

The record reflects verification of total quantity and value of U.S. sales and completion of numerous verification tests without discrepancy. See Verification Report at 2. The A/R reports requested at verification are now part of the record for review. Slip Op. 25-82 at 9–15.  The Government does not identify a single unreported sale to any GCR location.

Under these circumstances, Intervenor's reconciliation theory does not establish that necessary information was missing under § 1677e(a) or that Bridgestone failed to cooperate under § 1677e(b). It therefore does not sustain Commerce's resort to total AFA.


**IV.    The Rebate Record Does Not Support Total AFA**

Commerce's second principal justification for total AFA concerns rebate reporting. The Government asserts that Bridgestone failed to provide information necessary to verify rebate expenses. See Final Decision Memorandum at 22–24. The completed record does not support that assertion.

A.    **The Record Confirms That Commerce Verified Rebate Totals**

In the Final Decision Memorandum, Commerce stated that Bridgestone did not provide information essential to verification of rebates, rendering necessary information missing under § 1677e(a)(1). The verification record now before the Court reflects otherwise.

The Verification Report confirms that Commerce examined rebate documentation and verified total rebate expenses. Verification Report at 25. The completed record shows that Commerce relied on the rebate report and related summaries to confirm total rebate amounts and to select the largest and smallest rebate customers for further testing. See Verification Report at 25; Exhibit CEP-VE-10.

The rebate report reflects total rebate payments consistent with the accrual and payout amounts reported during the questionnaire phase. The breakdown list identifies the customer codes corresponding to the smallest and largest Exceptional Growth rebates, which Commerce used to request additional supporting documentation.

Commerce may not rely on those materials to verify totals and select sample transactions while simultaneously characterizing the rebate information as missing. See Nat'l Nail Corp. v. United States, 390 F. Supp. 3d 1356, 1381 (Ct. Int'l Trade 2019).

The record therefore does not support a finding that necessary rebate information was unavailable under § 1677e(a).

B.    **The Allocation Adjustment Did Not Introduce New Information**

At the outset of verification, Bridgestone identified a minor issue affecting allocation of rebate amounts across transactions and proposed a correction. See Final Decision Memorandum at 24; Compl. ¶¶ 61–72.

The proposed adjustment did not introduce new factual information or alter total rebate amounts. It relied exclusively on data already on the record and concerned only how verified totals were allocated among sales lines.

Commerce declined to accept the correction on the grounds that it was not minor. But refusal to accept an allocation refinement based solely on existing record evidence does not create a statutory gap under § 1677e(a). See *Çelik Halat Ve Tel Sanayi A.Ş. v. United States*, 557 F. Supp. 3d 1363, 1381 (Ct. Int'l Trade 2022) (abuse of discretion to impose extreme sanction for inconsequential deficiency); see also *Goodluck India Ltd. v. United States*, 393 F. Supp. 3d 1352, 1366 (Ct. Int'l Trade 2019).

Where total rebate amounts remain unchanged and the correction concerns allocation methodology, the statutory predicate for total AFA is not satisfied.

C.      **Commerce's Preliminary Analysis Undermines the Claimed Materiality**

Commerce's preliminary determination further demonstrates that rebate reporting did not render the dataset unusable.

At the preliminary stage, Commerce calculated a dumping margin using Bridgestone's reported rebate data. See Preliminary Margin Memorandum at PDF 2, 5, 439; Preliminary Results, 89 Fed. Reg. 43,806 (May 20, 2024). Even under Commerce's preliminary methodology, the margin calculation proceeded without resort to total AFA.

The Verification Report confirms that rebate totals were verified. Verification Report at 25. The record also reflects Commerce's understanding of the structure of the rebate programs. Exhibit CEP-VE-10.

Total AFA requires pervasive deficiencies affecting core data. *Zhejiang Dunan Hetian Metal Co. v. United States*, 652 F.3d 1333, 1348 (Fed. Cir. 2011). Verified rebate totals and allocation refinements do not approach that threshold.

14

### D.    The General Ledger Account Issue Does Not Establish a Statutory Gap

Commerce also referenced documentation relating to general ledger account 3248200, associated with Volume Bonus rebates. See Verification Report at 23–24; Final Decision Memorandum at 22.

The record reflects that this account related to rebates to affiliated customer GCR. Verification Report at 23–24. Rebates to affiliated customers are not reportable in the U.S. sales database, which covers sales to unaffiliated purchasers. See Questionnaire at I-7.

Information concerning that account therefore does not bear on completeness of reportable U.S. sales. Commerce may not invoke AFA based on failure to provide information that is not necessary to the dumping calculation. See *Husteel Co. v. United States*, 98 F. Supp. 3d 1315, 1356 (Ct. Int'l Trade 2015).

Moreover, the amount at issue represented a small fraction of total reported rebates and total U.S. sales. See Compl. ¶ 79. The Government does not explain how that amount rendered the entire dataset unusable.

### E.    The Record Does Not Support a Finding of Non-Cooperation

Finally, the record does not establish a failure to cooperate to the best of Bridgestone's ability under § 1677e(b).

Bridgestone provided access to its rebate accounting system, generated reports as requested, and supplied documentation for the customers selected by Commerce for testing. See Verification Report at 25; Exhibit CEP-VE-10. The allocation adjustment was presented at the beginning of verification.

The Government identifies no refusal to provide information, no concealment, and no obstruction of verification. Under *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382–83 (Fed. Cir. 2003), such conduct does not constitute a failure to cooperate.

15

Because necessary rebate information was on the record, the allocation adjustment did not introduce new data, and Commerce did not establish non-cooperation, the rebate-based rationale for total AFA cannot be sustained under § 1677e(a) or § 1677e(b).

## V.    The OTHDISU Finding Does Not Establish Missing Information

Commerce also relied on alleged deficiencies in Bridgestone's reporting of national account discounts (OTHDISU). That finding does not identify necessary information that was unavailable within the meaning of § 1677e(a).

In the Final Decision Memorandum, Commerce acknowledged that Bridgestone reconciled the total value of the relevant credit and debit notes to its trial balance. Final Decision Memorandum at 23. Commerce nevertheless asserted that an additional reconciliation was required to examine the appropriateness of the expense adjustment. Id.

The verification record does not reflect that such a separate reconciliation was requested. The exhibits show that Bridgestone provided a monthly schedule of credit and debit notes (billing types ZDG2 and ZDL2), that verifiers traced those amounts to the accounting system, and that underlying documentation was reviewed. See Verification Report at Exs. CEP-VE-5A, CEP-VE-8. The exhibits further confirm that only tire-related amounts were captured in the reported data. Id.

Commerce accepted the documentation, incorporated it into verification exhibits, and confirmed reconciliation to the trial balance. The Government does not identify an unreported expense, fabricated entry, or unverifiable total. A later assertion that additional analytical detail would have been useful does not establish that necessary information was missing under § 1677e(a).

16

Because the record reflects that the requested documentation was provided and examined, the OTHDISU finding cannot sustain total AFA.

## VI.    The Additional Verification Issues Do Not Render the Database Unusable

The Government also references various additional verification issues, including freight and warehousing, indirect selling expenses, packing costs, and DWAREHU reporting. See Gov't Br. at 9; Final Decision Memorandum at 29–34. These issues do not alter the statutory analysis.

Total AFA is appropriate only where reported data exhibits pervasive and persistent deficiencies that cut across core aspects of the dataset. Zhejiang Dunan Hetian Metal Co. v. United States, 652 F.3d 1333, 1348 (Fed. Cir. 2011). The issues identified here do not meet that standard.

### A.    Freight and Warehousing

Commerce identified a labeling inversion in a worksheet addressing U.S. warehousing and domestic freight expenses. See Final Decision Memorandum at 29–30; CEP-VE-18.

The record reflects that the underlying expense totals and calculated allocation ratios were correct. The issue consisted of transposed labels identifying which ratio corresponded to which expense category. The numerical amounts and calculations themselves were not disputed.

A clerical labeling inversion does not render verified expense data unusable and does not constitute missing information under § 1677e(a). See *Tatung Co. v. United States*, 18 C.I.T. 1137, 1141 (1994) (focus is on the nature of the error and its effect on the validity of the submission).

### B.    Indirect Selling Expenses

Commerce also cited a formula issue in the calculation of the indirect selling expense ratio. See Final Decision Memorandum at 31–33; CEP-VE-20.

The record confirms that the underlying expense totals and sales figures were reported and verified. The issue concerned the denominator used in calculating a ratio, not the absence of data. The numerator was correct; the denominator reflected a subset of POI sales.

A formula oversight affecting the presentation of a ratio does not establish missing information or non-cooperation under 19 U.S.C. § 1677e(a)–(b). See *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1382–83 (Fed. Cir. 2003) (best-of-ability standard does not require perfection).

C.    **Packing Costs**

Commerce observed that a packing cost account included materials associated with tube sales. See Verification Report at 34; CEP-VE-13.

The account balances were reported and verified. The issue concerned classification within a broader packing account and resulted in a modest overstatement of home market packing costs. Commerce quantified the effect.

Such a classification issue does not demonstrate that core sales or expense data were missing or unverifiable. See *Foshan Shunde Yongjian Housewares & Hardware Co. v. United States*, 35 C.I.T. 1398, 1416 (2011) (deficiencies must concern core information).

D.    **DWAREHU**

Commerce further referenced DWAREHU, representing temporary warehousing expenses in Thailand for U.S. sales. See Final Decision Memorandum at 30.

Bridgestone disclosed this expense in its narrative response and provided associated account information and trial balance documentation. See SCQR at 30; 2SSBCQR at Ex. 2SB-7. The issue concerned a field not populated in an electronic worksheet.

Commerce does not identify concealment or refusal to provide data. Nor does the record reflect that Commerce provided notice under § 1677m(d) identifying this issue as a deficiency requiring correction prior to resorting to facts available.

A clerical transmission issue does not establish that necessary information was missing from the record.

### E.    Aggregation Does Not Establish Pervasiveness

In the Final Decision Memorandum, Commerce asserted that these issues, taken together, rendered the dataset unusable. Final Decision Memorandum at 33.

Listing discrete clerical, allocation, or formula issues is not equivalent to demonstrating pervasive unreliability. The Verification Report reflects completion of numerous verification procedures without discrepancy, including tests of total quantity and total value of U.S. sales. See Verification Report at 2.

The Government does not identify missing datapoints, fabricated transactions, or unverifiable totals. The issues identified concern allocation methodology, labeling, or worksheet formulas—not the integrity of the underlying database.

Measured against the statutory standard articulated in Zhejiang Dunan, these issues do not constitute pervasive deficiencies affecting core data. Accordingly, they do not support total AFA under § 1677e(a) or an adverse inference under § 1677e(b).


## VII.    Pervasiveness Is Not Supported by Substantial Evidence

Commerce ultimately justified total AFA on the grounds that the issues identified during verification were pervasive and rendered Bridgestone's U.S. and home market sales databases unusable. See Final Decision Memorandum at 33. The Government and Intervenor repeat that characterization. The record does not support it.

19

Total AFA is reserved for pervasive and persistent deficiencies that cut across core aspects of the data. *Zhejiang Dunan Hetian Metal Co. v. United States*, 652 F.3d 1333, 1348 (Fed. Cir. 2011). Deficiencies must concern core information, not tangential matters. *Foshan Shunde Yongjian Housewares & Hardware Co. v. United States*, 35 C.I.T. 1398, 1416 (2011).

The record reflects the opposite of systemic unreliability. Commerce verified total quantity and total value of U.S. sales and completed numerous verification procedures without discrepancy. Verification Report at 2. Commerce possessed and examined the U.S. sales database, store-level identifiers, rebate totals, expense data, and supporting accounting documentation. See Verification Report at 2, 17–25, 34; CEP-VE-8; CEP-VE-10; CEP-VE-13; CEP-VE-18; CEP-VE-20.

No party has identified a fabricated transaction. No party has identified an unreported U.S. sale. The Government does not identify a calculation Commerce was unable to perform using the reported data.

Commerce's Final Decision Memorandum lists clerical, allocation, and formula issues and concludes, without analysis, that they collectively render the database unusable. See Final Decision Memorandum at 29–34. But aggregation does not establish pervasiveness absent a showing that the integrity of core sales and price data was compromised.

Commerce calculated a preliminary margin using Bridgestone's reported data. See Preliminary Margin Memorandum at PDF 5. A dataset that was used to calculate a margin and successfully subjected to verification cannot reasonably be deemed unusable in its entirety. See *Zhejiang Dunan*, 652 F.3d at 1348.

Because the record contains verified quantities, values, and prices sufficient to calculate a margin, the assertion of pervasiveness is not supported by substantial evidence.

20

## VIII. Intervenor's Exhaustion Arguments Do Not Preclude Review

Defendant-Intervenor argues that Bridgestone failed to exhaust arguments concerning verification timing, reconciliation requests, ZIP code reporting, and Commerce's application of the Cohen's d differential pricing methodology. Those arguments do not bar review.

### A.    The Core Statutory Issue Was Not Waived

Bridgestone does not challenge Commerce's discretion to conduct verification. It challenges Commerce's legal conclusion that necessary information was missing when the record demonstrates that the information was requested, presented, and reviewed. See Verification Report at 17–25.

Commerce's rationale was articulated in the Final Decision Memorandum. A party cannot exhaust objections to a rationale that did not exist during the administrative proceeding. See 28 U.S.C. § 2637(d) (exhaustion subject to court discretion).

In any event, exhaustion does not insulate a determination unsupported by substantial evidence. *See Nat'l Nail Corp. v. United States,* 390 F. Supp. 3d 1356, 1381 (Ct. Int'l Trade 2019). Whether Commerce may disregard record evidence is a legal question properly before the Court.

### B.    The Cohen's d Challenge Is Not Barred

Intervenor also argues that Bridgestone failed to exhaust any challenge to Commerce's use of the Cohen's d differential pricing methodology.

In *Toyo Kohan Co., Ltd. v. United States*, Slip Op. 25-141 (Ct. Int'l Trade Oct. 23, 2025), the Court recognized that exhaustion may be excused where raising a challenge during the administrative proceeding would have been futile given Commerce's rigid adherence to its methodology prior to judicial clarification of the governing legal standard.

Commerce applied the same Cohen's d framework here. See Preliminary Margin Memorandum at PDF 233. Under Toyo Kohan, exhaustion is not required where the agency's position was fixed and unyielding at the time of the proceeding.

Moreover, § 2637(d) vests the Court with discretion to consider issues not raised below where appropriate.

C.    **The Record Demonstrates the Dispositive Role of Cohen's d**

At the Preliminary Determination, Commerce calculated a margin using the average-to-average methodology and found no dumping. See Preliminary Margin Memorandum at PDF 5; 89 Fed. Reg. 43,806 (May 20, 2024).

Only after applying the Cohen's d test and switching to an average-to-transaction comparison methodology with zeroing did Commerce derive a positive margin. See Preliminary Margin Memorandum at PDF 439.

Commerce's program applied Cohen's d across three dimensions: purchaser, region, and time period. Id. at PDF 233. The record reflects that the methodology was triggered independent of any alleged ZIP code issue.

Accordingly, any asserted discrepancy in ZIP code reporting does not establish that Commerce lacked the data necessary to calculate a margin. It does not supply the statutory predicate for total AFA.

D.    **Total AFA Requires Its Own Statutory Basis**

Regardless of the comparison methodology selected, Commerce may resort to total AFA only if the requirements of § 1677e(a)–(b) are satisfied.

All reported sales and cost data—apart from disputes regarding specific fields—were verified and available for calculation. See Verification Report at 2, 17–25. The statute requires Commerce to use verified information where it exists. 19 U.S.C. § 1677e(a).

Intervenor's exhaustion arguments therefore do not salvage the determination.

## IX. Commerce's Corroboration Analysis Is Legally Deficient

Even if total AFA were permissible (it is not), Commerce's selection of the 48 percent rate fails independently because it was not corroborated as required by 19 U.S.C. § 1677e(c)(1).

Commerce purported to corroborate Bridgestone's rate by reference to another respondent's final margin. See Final Decision Memorandum at 47. That margin was itself derived using AFA. Reliance on another AFA-derived rate does not establish independent probative value.

AFA is not punitive and must bear a rational relationship to a respondent's actual commercial behavior. *F.Lii de Cecco di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000).

Here, Commerce's preliminary analysis yielded no dumping under the average-to-average methodology. See Preliminary Margin Memorandum at PDF 5. Nothing in the verified record suggests margins approaching 48 percent.

Where calculated margins range from zero to low levels, selection of a dramatically higher rate untethered to record evidence is unsupported. See *Oman Fasteners, LLC v. United States*, 125 F.4th 1068, 1085 (Fed. Cir. 2025).

Commerce's corroboration analysis therefore fails independently of its AFA determination.

## CONCLUSION

For the foregoing reasons, and those set forth in Bridgestone's opening brief, the Court should remand this matter with instructions that Commerce calculate Bridgestone's dumping margin using the verified record data.

Neither the Government nor Defendant-Intervenor has identified substantial evidence supporting the statutory predicates for total AFA. Commerce's determination therefore cannot be sustained.

Respectfully Submitted,

/s/ Daniel J. Cannistra
_____
Daniel J. Cannistra
Pierce Lee
Valerie Ellis
CROWELL & MORING LLP
1001 Pennsylvania Ave, NW
Washington, D.C. 20004
Tel: (202) 624-2500
Email: dcannistra@crowell.com

*Counsel for Plaintiff*

Dated: February 27, 2026

## CERTIFICATE OF COMPLIANCE

Pursuant to the Court's Standard Chambers Procedures, I certify that this reply brief complies with the 7,000-word limitation. According to the word-count function of Microsoft Word, the brief contains 5,997 words, excluding the portions exempted by the Court's rules, including the table of contents, table of authorities, signature block, and certificates.

Dated: February 27, 2026

/s/ Daniel J. Cannistra
_____
Daniel J. Cannistra

**EXHIBIT I**
**SUMMARY OF ALLEGED VERIFICATION ERRORS AND RECORD EVIDENCE**

Commerce identified six "significant issues" and five additional errors as the basis for applying total AFA. The table below summarizes each allegation and the record evidence demonstrating that no necessary information was missing and no data was unusable.

**I. Six "Significant Issues" Identified by Commerce**

| Alleged Error | Commerce's Stated Basis | Record Evidence / Rebuttal |
|---|---|---|
| 1. Failure to provide reconciliation of BATO's accounts receivable for GCR sales | Commerce stated it could not verify whether sales to affiliated GCR locations were fully reported and deemed the A/R report "incomplete." | The A/R reports for the 11 GCR stores were provided. Stores not appearing on the report had no receivable because no sales occurred during the POI. Commerce never identified a single unreported sale. The sales database, store identifiers, and verified quantity/value totals were on the record. |
| 2. Failure to provide breakdown of smallest and largest rebate values by customer and rebate type | Commerce claimed the absence of this breakdown constituted missing information necessary to calculate an accurate margin. | Total rebate amounts were fully reported and verified. Commerce relied on those totals during verification and preliminary calculations. No unreported rebate was identified. The dispute concerns presentation format, not missing data. |
| 3. Failure to provide documentation regarding large credit balance for volume bonus rebates | Commerce asserted the absence of supporting documentation created a record gap. | The GL account at issue was unrelated to reportable rebates. Commerce did not identify any unreported rebate expense or adjustment affecting U.S. price. No sales or rebate amounts were omitted from the database. |
| 4. Failure to provide itemized reconciliation for OTHDISU (other discounts) | Commerce stated it could not confirm whether credit/debit notes included items beyond reported discounts. | The total values of the discounts were reported and tied to accounting records. Verification exhibits confirmed tire-related billing items only. Commerce did not identify any unreported discount; it objected only to the requested reconciliation format. |
| 5. Misreporting of three rebate programs and failure to timely report fourth (Milestone program) | Commerce deemed revisions untimely new factual information rather than minor corrections. | The underlying rebate expenses were recorded in the accounting system and included in total reported rebates. No rebate expense was omitted. The issue concerns allocation/classification, not missing information. Totals were verified. Commerce calculated a preliminary margin using what operated as an adverse inference for rebates by disallowing the deduction to Normal Valu. |
| 6. Misreporting of U.S. sales destination (billing ZIP vs. delivery ZIP) | Commerce rejected the methodology used to report customer ZIP code. Not a margin field – used only in the differential pricing analysis. | Delivery addresses were contained in invoices and freight documentation already on the record. No sale was omitted. Commerce conducted a preliminary differential pricing analysis using the reported database and applied differential pricing (zeroing) to Bridgestone's margin. The issue concerns reporting methodology, not absence of data. |

**II. Five Additional Errors Identified by Commerce**

| Alleged Error | Commerce's Stated Basis | Record Evidence / Rebuttal |
|---|---|---|
| 7. Failure to report certain other discounts in OTHDISH field and incorrect values for one customer | Commerce cited incorrect field reporting. | Underlying credit/debit values were recorded and available in accounting records. No discount expense was omitted. The issue concerns field placement, not missing datapoints. |
| 8. Errors in reporting certain U.S. warehousing expenses (DWAREHU field update issue) | Commerce found database field not updated and calculation not separately provided. | Warehousing expense totals were reported and traceable to trial balances. The POI trial balance confirms the amounts. Commerce did not identify unreported expenses; the issue concerns database labeling and placement. |
| 9. Errors regarding home market packing expenses | Commerce identified inclusion of certain tube-related materials in packing account. | Verification quantified the effect at approximately 0.24 Baht (~$0.007 per unit). Underlying packing account balances were verified. No packing data was omitted; this was a minor classification adjustment. |
| 10. Failure to include updated domestic inland freight calculation | Commerce referenced absence of updated calculation in U.S. sales database. | Domestic freight totals were reported and verified. The issue reflects a calculation update placement, not missing expense data. No sale-specific freight cost was unreported. |
| 11. Miscalculation of indirect selling expense ratio | Commerce identified formula denominator error. | Underlying expense and sales totals were fully reported and verified. The formula error overstated the expense deduction, increasing the dumping margin. No datapoints were omitted; this was a correctable ministerial issue. |